HANAUER, Appellant, vs. REPUBLIC BUILDING COMPANY, Respondent.

*April 3—October 9, 1934.*

50

For the appellant there were briefs by *Goldenberg & Durant,* attorneys, and *Samuel Goldenberg* of counsel, all of Milwaukee, and oral argument by *Mr. Goldenberg* and *Mr. W. T. Durant.*

For the respondent there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish* and *E. H. Hallows* of counsel, all of Milwaukee, and oral argument by *Mr. Fish* and *Mr. Hallows.*

The following opinion was filed June 5, 1934:

WICKHEM, J. The sole question for determination upon this appeal is the constitutionality of sec. 269.58, Stats.

Plaintiff contends that this section is repugnant to sec. 10, art. I, of the United States constitution, prohibiting the enactment by any state of a law impairing the obligation of contracts. This conclusion is asserted to follow by reason of the postponement until the completion of foreclosure proceedings of the right of plaintiff to sue at law upon the bonds. This is contended to impair valuable rights of the plaintiff under his contract. It is asserted that the law destroys the negotiability of these bonds by making the date of payment, as well as the fact of ultimate payment, uncertain. The section has, of course, no effect whatever upon the formal negotiability of the bonds, since this is determined by the provisions of the bonds and not by the operation of legal remedies. The gist of plaintiff's contention is that the section impairs the marketability of the bonds, and that to this extent it impairs the value of the contract.

At the outset it should be stated that we are concerned with the validity of this act as applied to one of numerous bonds secured by a trust deed. These bonds are widely held by different persons. They are negotiable, merely containing a reference to the trust deed, similar to that contained in the bonds dealt with by this court in *Pollard v. Tobin,* 211 Wis. 405, 247 N. W. 453. An examination of the trust deed discloses no limitation upon the right of the bondholders to sue at law upon the bonds or coupons. Hence this case is not affected by the rule in *Oster v. Buildings Development Co.* 213 Wis. 481, 252 N. W. 168. The trust deed vests in the trustees, and under certain conditions, in a majority in amount of the bondholders, full rights to move for the foreclosure of the security. The owner of a particular bond, except as he may be able to induce the trustee to act, or except as he may act as one of a majority of the bondholders, has literally no control over the cause of action for foreclosure. The mortgagee of a mortgage secured by a single note has a free choice of remedies, and if he elects, may sue to foreclose

the mortgage and in that action secure a deficiency judgment based upon the note. Such a mortgagee has two remedies upon the promissory note: (1) The ordinary action at law, and (2) the foreclosure proceedings in which he may have judgment for the entire debt reduced by whatever sum the foreclosure sale produces. In the case of the bondholder situated as is plaintiff, except for the operation of sec. 269.58, there are likewise two remedies upon the bond, but the bondholder has virtually no control over the remedy of foreclosure. Thus in fact the operation of sec. 269.58 is to postpone indefinitely the only remedy over which plaintiff has any substantial degree of control. Whatever legal materiality this may have, it certainly represents a factual distinction that should be observed and considered. Since the law clearly applies to persons situated as was the plaintiff, and since there is no possibility of severance, its validity must depend upon its effect on plaintiff's contract rather than upon the contracts of those who have full control and a free choice of remedies.

Since the section under consideration is simply one of several acts constituting emergency moratoria, and since the supreme court of the United States, in *Home Building & Loan Asso. v. Blaisdell,* 290 U. S. 398, 54 Sup. Ct. 231, has so recently passed upon this subject, and so exhaustively dealt with the scope of the contract clause and its relation to the police power, this opinion may well begin with an analysis of that case. The court there recognized the rule that the police power is limited by express prohibitions contained in the constitution. This conclusion made necessary an inquiry into the scope of the prohibition in the contract clause. The court held that this clause was not to receive a literal interpretation, and that the fact that a statute impairs the obligation of a contract does not inevitably mean that the enactment is thereby rendered void. It is stated in the *Blaisdell Case:* "Not only is the constitutional provision qualified by

the measure of control which the state retains over remedial processes, but the state also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end 'has the result of modifying or abrogating contracts already in effect.' " Citing *Stephenson v. Binford,* 287 U. S. 251, 53 Sup. Ct. 181. It is also stated that "the policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worth while." It is further said that "the legislature cannot 'bargain away the public health or the public morals,' " and that "the economic interests of the state may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts." The court then states : "The question is not whether the legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end."

Prior to the *Blaisdell Case* there had existed a rather nebulous distinction between procedural statutes which impair and those which do not impair the obligation of contracts. In *Sturges v. Crowninshield,* 4 Wheat. 122, 200, the court said :

"The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."

However, in *Von Hoffman v. Quincy,* 4 Wall. 535, the court said :

"Nothing can be more material to the obligation than the means of enforcement. . . . The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the constitution against invasion."

These two positions seem clearly to state contrary rules of law, but it is pointed out in the *Blaisdell Case* that the broad language in the *Von Hoffman Case* must not be taken too literally, and that in the same case the rule is stated that "it is competent for the states to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired."

In *Conley v. Barton,* 260 U. S. 677, 43 Sup. Ct. 238, the court said:

"It is recognized that the legislature may modify or change existing remedies or prescribe new modes of procedure without impairing the obligation of contracts if a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract."

To the same effect, see *Oshkosh Waterworks Co. v. Oshkosh,* 187 U. S. 437, 23 Sup. Ct. 234, where it is said:

"It is true the legislature may not withdraw all remedies, and thus, in effect, destroy the contract; nor may it impose such new restrictions or conditions as would materially delay or embarrass the enforcement of rights under the contract according to the usual course of justice as established when the contract was made. Neither could be done without impairing the obligation of the contract."

The Wisconsin decisions are to the same effect. See *Von Baumbach v. Bade,* 9 Wis. *559, in which it was held that a statute extending the time to answer in a foreclosure action from twenty days to six months, was a mere change in remedy. Also *Lightfoot v. Cole,* 1 Wis. *26, in which the court stated that it was "within the power of the legislature to repeal, amend, change, or modify the laws governing proceedings in court, both as to past and future contracts, so that they leave the parties a substantial remedy according to the course of justice as it existed at the time the contract was made."

In *Northwestern Mut. L. Ins. Co. v. Neeves,* 46 Wis. 147, 49 N. W. 832, the statute substituted a new procedure for the foreclosure of mortgages. Under the new procedure, instead of an immediate personal judgment, to be followed by an immediate sale subject to one year's redemption, provision was made for a judgment postponing the sale for one year and allowing a personal judgment for the deficiency ascertained after the sale. This was held to be a mere regulation of remedy and not an impairment of the obligation of contract.

In *Pawlowski v. Eskofski,* 209 Wis. 189, 244 N. W. 611, this court said:

"If a statute substantially lessens the value of a pre-existing contract the constitutional provision bars application of it to the contract. Many decisions of the supreme court of the United States have so held. This was held as far back as 6 Howard, where it is said in *Planters' Bank v. Sharp* (p. 327):

" 'One of the tests that a contract has been impaired is that its value has by legislation been diminished. It is not, by the constitution, to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force.' "

It would seem, under the decision in the *Blaisdell Case,* that the fact that a statute purports to deal with a remedy has no longer any materiality, except in determining whether the statute is addressed to a legitimate end and is appropriate to that end. Certainly it must at least be said that a statute having other than procedural objectives cannot be sustained merely because it expressly deals with the subject-matter in terms of remedy, if it could not be sustained in a more direct form. Sec. 269.58 is not procedural in objective. It forms a part of a scheme of moratory legislation enacted for the purpose of alleviating conditions produced by the depression. The legislative intent and purpose are plain. Sec. 278.106

confers upon courts of equity the power, in their discretion, to extend the period of redemption in foreclosure proceedings, provided interest or taxes, or both, are paid by the mortgagor during the extended period. Sec. 269.58 was intended to compel mortgagees to seek their remedy through an action of foreclosure, and thus to subject themselves to the provisions of sec. 278.106. It was not enacted for the purpose of relieving the burdens of courts, or to promote the economical administration of justice.

The validity of the statute must be determined by its effect upon contracts such as plaintiff's, and if it is found to impair them, the tests of the *Blaisdell Case* must be applied. That plaintiff's contract has in fact been seriously impaired in value by the indefinite postponement of the remedy at law for its enforcement is not open to doubt. That this is the only remedy which plaintiff may freely pursue and over which plaintiff has any substantial degree of control must also be taken as established. These conclusions having been reached, it becomes proper to apply the formula of the *Blaisdell Case* to determine the validity of the enactment.

Is the legislation directed to a legitimate end? Certainly the *Blaisdell Case* has decided that it is, and there would seem to be no reasonable ground to differ with this conclusion. The suffering, hardship, and calamitous consequences of the depression are known to every one, are judicially noticed by the courts, and require no extended description here. That such enactments were designed to alleviate these conditions, and that such an objective is legitimate, would hardly seem open to debate.

Is the legislation reasonably appropriate to this end? In answering this question the rule of *Home Building & Loan Asso. v. Blaisdell, supra,* requires in each case a balancing of social needs against the individual rights claimed to be impaired. The greater the public exigency, the greater will be the degree of impairment found to be reasonable and hence permissible. It is the relation between these two facts that

must always be considered. To state that an emergency exists is merely another way of stating the existence of a great and pressing public need. To say that an emergency creates the occasion for a greater exercise of the police power with respect to contracts, is merely to state that a greater degree of impairment is permissible when the pressure of the social need is great. It follows that the question in each case must ordinarily be solved by a consideration of the facts and circumstances of that case. It is all a matter of degree. The court, in *Pennsylvania Coal Co. v. Mahon,* 260 U. S. 393, 413, 43 Sup. Ct. 158, speaking through Mr. Justice HOLMES, and referring to the scope of the police power, said:

"But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts."

The foregoing conclusions would naturally lead to an independent consideration upon the basis suggested, in an attempt to apply the general formula of the *Blaisdell Case.* However, with respect to emergency moratoria not dissimilar in objective or effect to the enactment under examination, the court, in the *Blaisdell Case,* has set forth certain criteria of reasonableness by which this court is bound. These were set forth with reference to a statute extending the period of redemption upon foreclosures. The law under examination, at least in so far as it applies to plaintiff's contract, suspends the right to bring an action at law upon the debt secured until such time as proceedings for foreclosure of the security shall have been completed. If the trustee under the trust deed asks for and obtains a deficiency judgment, there will be left no cause of action upon the bond. If the trustee does not ask for or obtain such relief, plaintiff must defer action until the foreclosure is complete. At the very least this

amounts to a suspension for an indefinite period of plaintiff's right of action upon the bond, and since plaintiff and others similarly situated are in no position to move in the foreclosure proceedings, it cannot be said that the law has left to plaintiff a substantial remedy in place of that impaired. Hence, the rule in cases holding that there is no such impairment as will invalidate a procedural statute, if a substantial remedy is left, appears to be inapplicable here even if it has survived the *Blaisdell Case*. Whether it is applicable to cases where the note and mortgage are wholly owned by one person, need not be determined, since the enactment is not capable of being sustained in part, and upon this matter we express no opinion.

All of the conditions, save two, mentioned in the *Blaisdell Case* as governing the reasonableness of an exercise of police power in cases of moratory legislation, may be passed with the comment that the law appears to meet the tests satisfactorily.

The first condition to which we address our attention is the requirement that the legislation be temporary in operation, and limited to the exigency which called it forth. The statute in the *Blaisdell Case* was definitely limited as to time. While sec. 269.58 is stated to have been enacted in response to the present emergency, it contains no provision definitely limiting its term. Is this omission fatal to the validity of the act? In *Vanderbilt v. Brunton Piano Co.* 111 N. J. Law, 596, 169 Atl. 177, the court said:

"We may take judicial notice of the financial emergency that now presses upon so many people in so much of the world, but we may not read into the statute a limited duration that is neither expressed nor implied therein. . . ."

On the other hand, the New York court of appeals, in *People by Van Schaick v. Title & Mortgage Guarantee Co. of Buffalo,* 264 N. Y. 69, 190 N. E. 153, said:

" 'A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate

if the emergency ceases or the facts change, even though valid when passed.' *Chastleton Corp. v. Sinclair,* 264 U. S. 543, 44 Sup. Ct. 405. Failure by the legislature to limit the operation of the law to a definite term does not render the law invalid so long as the conditions which justify the passage of the law remain."

As an original proposition, we would be inclined to the view expressed by the New York court, on the ground that it must be assumed, since the law was enacted as an emergency measure, it was not intended to survive the emergency that brought it forth. However, in the recent case of *W. B. Worthen Co. v. Thomas,* 292 U. S. 426, 54 Sup. Ct. 816, the United States supreme court held that failure to limit emergency legislation to the period of the emergency was fatal to its validity. In that case "the legislature sought to justify the exemption by reference to the emergency which was found to exist. But the legislation was not limited to the emergency and set up no conditions apposite to emergency relief."

The next criteria of reasonableness and validity is thus stated by Mr. Chief Justice Hughes in the *Blaisdell Case:*

"3. In view of the nature of the contracts in question—mortgages of unquestionable validity—the relief afforded and justified by the emergency, in order not to contravene the constitutional provision, could only be of a character appropriate to that emergency *and could be granted only upon reasonable conditions.*"

The court thereupon proceeds to consider whether certain conditions in the Minnesota statute are reasonable. It notes that the integrity of the mortgage indebtedness is not impaired; that interest continues to run; that the validity of the sale and the right of a mortgagee-purchaser to title or to obtain a deficiency judgment is not impaired, and that the conditions of redemption stand as they were under the prior law.

These matters cannot have been intended to describe the conditions upon which relief was granted in the Minnesota

statute. They constitute merely an enumeration of the respects in which the rights of the mortgagee have been left unimpaired. The condition upon which relief could be given the mortgagor under the Minnesota statute was that the rental value of the premises be paid by the mortgagor and applied to interest and other carrying charges. This was treated as containing sufficient compensation to the mortgagee to indicate that the statute "has regard to the interest of the mortgagees as well as to the interest of the mortgagors," and to make applicable the doctrine of the rent law cases. *Marcus Brown Holding Co. v. Feldman*, 256 U. S. 170, 41 Sup. Ct. 465; *Edgar A. Levy Leasing Co. v. Siegel*, 258 U. S. 242, 42 Sup. Ct. 289. It was the reasonable character of this condition that determined the validity of the act. Although not explicitly so stated, the decision seems to imply that the further fact that the granting of an extension is within the discretion of the court, and that it must be granted upon conditions fair and equitable to both mortgagor and mortgagee, is a factor in its validity. The difficulty present in sec. 269.58 is that there are no conditions compensatory to the secured creditor situated as is plaintiff, nor is the matter left to the discretion of a court. With respect to plaintiff's contract, there is an indefinite, unconditional, and uncompensated postponement of his right. The situation is quite different from that presented by sec. 278.106, where the court, in its discretion, may grant an extension of the period of redemption in foreclosure actions only upon payment of interest or taxes, or both.

It is suggested by defendant that the requirement of conditions compensatory to the mortgagee has no application to statutes affecting the remedy at law under the bond, since a bondholder has no right, by virtue of his bond, to possession of the security or to the rents and profits thereof. It is claimed that the bondholder is consequently not so deprived of property rights by the operation of the act as to entitle

him to compensatory conditions. It is unnecessary to express any opinion as to the validity in principle of the distinction suggested. It is our view that the *Blaisdell Case* offers no support to the suggested distinction, and this construction of the *Blaisdell Case* is confirmed by the *Worthen Case*.

In the *Worthen Case, supra,* the legislature of Arkansas enacted a law exempting the proceeds of insurance policies "from liability or seizure under judicial process of any court." It was provided that they "shall not be subjected to the payment of any debt by contract or otherwise by any writ, order, judgment, or decree of any court. . . ." The court held this law to be unconstitutional as impairing the obligation of contracts. The court said:

"We held that when the exercise of the reserved power of the state, in order to meet public need because of a pressing public disaster, relates to the enforcement of existing contracts, that action must be limited by reasonable conditions appropriate to the emergency. . . . Accordingly, in the case of Blaisdell, we sustained the Minnesota mortgage moratorium law in the light of the temporary and conditional relief which the legislation granted. . . .

"In the instant case, the relief sought to be afforded is neither temporary nor conditional. In placing insurance moneys beyond the reach of existing creditors, the act contains no limitations as to time, amount, circumstances, or need. We find the legislation, as here applied, to be a clear violation of the constitutional restriction."

After careful deliberation, we are unable to escape the conclusion that sec. 269.58 fails to meet two of the tests definitely prescribed as conditions to validity by the *Blaisdell* and *Worthen Cases.* The operation of the rule in the *Blaisdell Case* presupposes a substantial impairment of contract rights, and requires conditions compensatory to the person whose rights are thus affected. In the instant case the right to have the remedies of execution, garnishment, attachment,

and other means of reaching the property of the debtor, is impaired, and the requirements of the two cases cited seem plainly to be applicable. Since we are not at liberty to depart from the criteria definitely laid down by the supreme court of the United States, and applicable to emergency legislation generally, the section must be held to be wholly void and inoperative.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer.

The following memorandum was filed October 9, 1934:

WICKHEM, J. (*on motion for rehearing*). While the motion for rehearing in this case was pending, the cases of *Marshall & Ilsley Bank v. W. J. Durham Lumber Co., First National Bank of Neenah v. W. J. Durham Lumber Co.,* and *First National Bank of Menasha v. W. J. Durham Lumber Co., post,* p. 66, 256 N. W. 783, were argued and submitted. Since the appeals in these cases involve the constitutionality of sec. 269.58 as applied to a mortgagee who completely owned the debt as well as the security, and since the subject is of great importance, the court has restudied and reconsidered the entire matter, and the conclusions here set forth dispose not only of the motion for rehearing but also the appeal in the *Marshall & Ilsley Bank, First National Bank of Neenah,* and *First National Bank of Menasha Cases.*

The original decision in this case was expressly grounded upon the contract clause of the constitution of the United States, as construed in the *Blaisdell* and *Worthen Cases.* Sec. 269.58, Stats., was held to be unconstitutional and void as applied to bondholders having no control over the proceedings to foreclose the security, for the reason that it unconditionally and indefinitely denied to them the only remedy over which they had any substantial measure of control. After a careful reconsideration of the *Blaisdell* and *Worthen*

*Cases,* we adhere to this conclusion. It is contended in the briefs that the doctrine of the *Blaisdell Case* does not require that a balanced *quid pro quo,* approximating in value the right impaired, be given the mortgagee. While this may be true, it was definitely required, as we read the cases, that conditions taking reasonable account of the rights and interests of the mortgagee be imposed. Since none were imposed by the section under examination, it is unnecessary to consider what the precise character of these conditions must be to measure up to the requirement of reasonableness set forth in the *Blaisdell* and *Worthen Cases.*

It was further held that sec. 269.58 was wholly unconstitutional and void as to all mortgages existing at the time of its enactment, first, because it was incapable of being separately applied to mortgagees who completely owned the debt and security, and, second, because it was not limited in duration to the period of the emergency. These conclusions made it unnecessary for this court to consider whether, as to those who completely owned the debt and security, the legislature could validly postpone or destroy the action at law upon the debt, leaving only the remedy of foreclosure as a means of enforcing the debt, and no opinion was expressed as to the validity of such legislation under such circumstances.

We are urged to reconsider the conclusion that the act cannot be separately applied to mortgages wholly owned by a single mortgagee. This contention is based upon the fact that sec. 4 of ch. 125, Laws of 1933, reads as follows:

"If any provision of this section or the application thereof to any person or circumstance is held unconstitutional the remainder of the act and the application of such provision to other persons or circumstances shall not be affected thereby."

It is contended that the word "section" as used in sec. 4 refers to the whole of ch. 125, and requires, in the event that the law is held to be unconstitutional in its application to any person, that it be sustained as to others with reference to

whom it is not subject to constitutional objections. The saving clause is unquestionably ambiguous, in that it is capable of being construed as applying only to sec. 278.106, as the word "section" and its relation to sections immediately preceding seem to imply, or to the entire act, as its numbering, and the use of the words "remainder of the act" seem to imply. There would appear to be considerable merit to the claim that the act is capable of being separately applied. We withdraw the opinion originally expressed upon this contention, and express no opinion upon it for the reason that its disposition becomes immaterial in view of the fact that the court adheres to its opinion that the act is required to be limited in duration to the period of the emergency, and that it fails to meet this requirement. A reconsideration of the *Worthen Case* fortifies us in the opinion originally entertained that the act must be limited in duration to the emergency. There may be reasonable doubt whether this limitation must be accomplished by setting a positive date after which the legislation shall have no effect. But it was held in the *Worthen Case* that a mere reference to the emergency is not sufficient to warrant the conclusion that the act was intended to cease at the end of the emergency.

The Arkansas law, under examination in the *Worthen Case,* contained a preliminary clause reciting, in much the same manner as does the preamble to sec. 269.58, the existence of an emergency arising out of "the desperate financial situation now existing," and recites the evil consequences to citizens of the state, which the law was intended to mitigate. The court, in the *Worthen Case,* said:

"The legislature sought to justify the exemption by reference to the emergency which was found to exist. But the legislation was not limited to the emergency and set up no conditions apposite to emergency relief. . . ."

We can only construe this to mean that a mere reference to an emergency as the occasion for enacting a law is not

sufficient to indicate a legislative intention that the law be limited in duration to the period of the emergency.

It is argued that, properly construed, sec. 269.58 has a definite period of termination, and that this date is March 1, 1935. This contention requires a consideration of the form of the act as adopted. Ch. 125 was divided into five sections. Sec. 1 provides for adding to the statutes two new sections, secs. 269.58 and 278.106. Such ambiguity as is present is the result of the use of the word "section" to indicate the various divisions of ch. 125 as presented to the legislature, and also to designate secs. 269.58 and 278.106. Sec. 269.58 concededly has no express time limitation. Sec. 278.106, which in substance extends the period of redemption in ordinary mortgage foreclosures, provides that in any action commenced prior to March 1, 1935, the benefits of an emergency extension of the period of redemption shall be granted. It provides that "this section shall terminate on March 1, 1935," and that "this section shall apply to all proceedings commenced prior to March 1, 1935." It contains five references to the date of March 1, 1935, and in each one of them it is plain that the word "section," where used in connection with this date, refers to and is to be printed in the statutes as a part of sec. 278.106, and is not intended to refer to sec. 269.58.

Under these conditions we conclude that the legislative history of the statute does not disclose any intention to limit the duration of sec. 269.58. Whether this was because the legislature intended to give to this section not only a retrospective but a prospective and general application need not be here decided, nor is there any occasion to consider whether, if so intended, it is capable of being separated and its validity to this extent established.

We have been favored with exceptionally able briefs which have been of great assistance to the court. The briefs in support of the validity of the law have contained careful and useful analyses of the social and economic situations which

form the background of this legislation, and are asserted to establish its reasonableness. We have not addressed this opinion to any of these arguments for the reason that we consider ourselves bound to consider and apply to these cases the *Blaisdell* and *Worthen* decisions.

A motion for a rehearing was denied, with $25 costs, on October 9, 1934.