STATE, Respondent, vs. RETAIL GASOLINE DEALERS ASSOCIATION OF MILWAUKEE, INC., and others, Appellants.

*February 10—March 7, 1950.*

538

*John C. McBride,* attorney, and *Ralph J. Drought* of counsel, both of Milwaukee, for the appellants.

For the respondent there were briefs by the *Attorney General, Leonard Bessman,* assistant attorney general, and *William J. McCauley,* district attorney of Milwaukee county, and oral argument by *Mr. Bessman.*

A brief was also filed by *W. H. Bender, Bender, Trump & McIntyre* of Milwaukee; *Richard N. Hunter, Lowry & Hunter* of Waukesha; *Howard Neitzert, Sidley, Austin, Burgess & Smith* of Chicago, Illinois; *Steven E. Keane, Miller, Mack & Fairchild* of Milwaukee; *John T. Chadwell, Victor P. Kayser, Snyder, Chadwell & Fagerburg* of Chicago, Illinois; *Clifford A. Randall, Zimmers, Randall & Zimmers* of Milwaukee; *Edwin J. Gross* of Milwaukee; *Clarence D. Steinhilber, Kleczka & Steinhilber* of Milwaukee; *Delbert H. Schmahl* of Milwaukee; *Elmer A. Kletzien* of Menomonee Falls; *Raymond J. Moore* of Milwaukee; *John H. Regan* of Milwaukee; and *T. Fred Baker* of Milwaukee, as *amici curiae.*

BROWN, J.   An examination of the evidence is convincing
that the individual and corporate defendants unlawfully com-
bined and conspired to fix the retail price of gasoline in Mil-
waukee county contrary to the provisions of sec. 133.01,
Stats., and did in fact fix the price thereof.   The principal acts
were performed by Louis M. Faber, executive secretary of
the defendant association, as a part of his job, under the
direction and control of the officers and directors of the
association and with their approval.   The acts, in fact, are
not denied but defendants deny, (1) that there was a con-
spiracy, (2) that the acts were performed for the purpose of
price fixing, and (3) that they had that effect.   An example
of the defendants' procedure is taken from a bulletin issued
by the association to its three hundred ninety-five members
and a larger number of other retail gasoline dealers in the
county.   It is state's Exhibit 12 and contains the following:

*"Every dealer is asked to sit tight at his present prices.*
"We are watching this situation very carefully and hope
that no dealer will make any price move until he is informed
by this association on what to do.
"For your own salvation, don't make any move, regardless
of what any oil company tells you until you hear from us."

Other bulletins were of like tenor and there was undisputed
testimony that when the recommendations of the bulletins
suggesting prices were not followed they were supplemented
by personal solicitation of the dealers by individual defend-
ants.   The proof also was that the prices in the county
changed promptly in accord with the recommendations of the
association's bulletins and when a preliminary injunction
brought the bulletins to an end the price fluctuations ceased
and were not resumed.   Appellants have objected to the
admission of evidence of price stability after the injunction
since that was later than the time when the state charges the
conspiracy functioned, but we consider the evidence was com-
petent and material to prove the effect of the defendants' acts

by offering a comparison of the market during defendants' activity and when it was not subject to defendants' operations. The findings of conspiracy involving all named defendants (other than Lester Kleinmann against whom no such finding was made) and of the conspiracy being effective to fix prices must be sustained.

Appellants submit that sec. 133.04, Stats., grants the defendant association exemption from the provisions of sec. 133.01. The material part of the subsection reads: "provided, that nothing therein [in the three preceding sections of the chapter] shall be construed to affect . . . associations or organizations intended to legitimately promote the interests of trade, commerce, or manufacturing in this state." They say that the intent which the statute refers to is the intent expressed by the organization's charter. It may be conceded that the expressed intent is legitimate. If it appeared to be illegitimate the state would hardly have granted a charter. But we cannot concede that inquiry must stop there. The legislature has determined that combinations to fix prices and restrain competition are evils to be severely dealt with, but appellants imply that if conspirators organize a corporation whose purpose is piously professed, under its cloak they may thereafter do with impunity what previously was forbidden. We do not agree. We hold that the intent of the association can be determined from its actions and if such actions show an intent to promote by illegitimate means the interests of their trade, commerce, or manufacturing, the statute (sec. 133.04) provides no shield behind which they may conspire by methods and for ends prohibited to others. The printed and oral evidence shows the attempt to fix, establish, and maintain prices, and restrain competition was so frequent and regular as to establish the conclusion that price fixing was a principal purpose of the association if not the principal one. Therefore, we sustain the conclusion of the trial court that defendant association has no exemption under sec. 133.04, from the liabilities elsewhere provided by ch. 133, Stats.

The trial court's decision states that the court is without discretion in the matter of declaring forfeit the corporate charter of the offending association. Its judgment decreed the charter canceled and annulled. Appellants have not contested this part of the decision or judgment but a number of *amici curiae* have favored us with a brief by which they hope to show that the court erred in its belief that forfeit of the charter was mandatory. The brief advances two arguments:

"(1) The court erred in holding that the entry of the judgment of cancellation and annulment of the charter was mandatory and in entering such judgment without considering the relevant facts and circumstances bearing upon the propriety of such judgment.

"(2) The trial court erred in ordering such cancellation and annulment because the statutes upon which the order is based are unconstitutional as denying equal protection of the laws."

Concerning proposition (1), *amici curiae* differ with the trial court in its interpretation of the word "shall" where it appears in secs. 133.21 and 133.23, Stats. Those sections are:

"133.21. *Domestic corporations; cancellation of charters for restraining trade; affidavit.* Any corporation organized under the laws of this state which shall enter into any combination, conspiracy, trust, pool, agreement, or contract intended to restrain or prevent competition in the supply or price of any article or commodity in general use in this state, or constituting a subject of trade or commerce therein, or which shall in any manner control the price of any such article or commodity, fix the price thereof, limit or fix the amount or quantity thereof to be manufactured, mined, produced, or sold in this state, or fix any standard or figure by which its price to the public shall be in any manner controlled or established, shall, upon proof thereof, in any court of competent jurisdiction, have its charter or authority to do business in this state canceled and annulled. . . ."

"133.23. *Ouster.* Upon complaint being made to the attorney general and evidence produced to him which shall satisfy

him that any such corporation has violated any of the conditions specified in sections 133.21 and 133.22, he shall forthwith bring an action in the name of the state in any circuit court of this state to have the charter of such corporation forfeited, canceled, and annulled, and upon due proof being made thereof to the satisfaction of the court, judgment shall be entered therefor. . . ."

It is urged that where "shall" appears it should be converted to "may" by judicial construction. The argument is that if the literal construction leads to absurd, unreasonable, or unjust results a construction not subject to such infirmities will be adopted in order to carry out the true purpose and intent of the legislature. We do not question the statement of principle; only its application. We find no obscurity in the sections referred to. The words and meaning are plain and explicit. Whether or not dissolution is too severe a penalty to impose on a corporation which engages in a conspiracy to fix prices only the legislature can say. It depends on how serious the legislature thought the offense is and what means it thought would be an effective deterrent and appropriate punishment. There is no indication, which we have been able to discover, that the legislature considered the offense to be trivial. We cannot say that the penalty provided is unjust or unreasonable or that a literal interpretation of "shall" produces any result so absurd or incongruous that we must assume the legislature by oversight or mistake failed to express its will. Accordingly, there is no ground on which we can find, or even suppose, that the legislature did not mean exactly what it said and we have no justification to import a different meaning into the word "shall" to accomplish the supposed legislative purpose. We agree with the learned trial court's interpretation of the statute and hold that when the defendant association has been adjudged a violator of sec. 133.01, Stats., judgment decreeing the forfeiture of its corporate charter is mandatory.

Remembering that this is a court of review, we must dispose of *amici curiae's* proposition (2) by stating that the constitutionality of the statutes under which this action is prosecuted was not questioned or considered in the trial court and cannot be raised for the first time upon the appeal.

*By the Court.*—Judgment affirmed.

MARTIN and BROADFOOT, JJ., took no part.