STATE, Respondent, vs. Ross, Appellant.

*May 11—June 15, 1951.*

380

*Darrell O. Hibbard* of Eau Claire, for the appellant.

For the respondent there was a brief by the *Attorney General, Leonard Bessman,* assistant attorney general, and *Victor O. Tronsdal,* district attorney of Eau Claire county, and oral argument by *Mr. Bessman* and *Mr. Tronsdal.*

MARTIN, J. The complaint herein alleged and the trial court found that the defendant, a retail grocer, had advertised

or sold below cost as loss leaders the following-described items of merchandise at the prices and on the dates indicated:

| Date | Item | Invoice or Replacement Cost | Defendant's Retail Price |
|------|------|------|------|
| Oct. 5, 1949 | Cigarettes | $1.75 per carton | $1.83 |
| Oct. 5, 1949 | Hill's Brothers Coffee | 51¢ per lb. | 52¢ |
| Jan. 19, 1950 | Spry | 73¾¢ per 3 lbs. | 75¢ |
| Feb. 9, 1950 | Rinso | 49¼¢ for giant size | 51¢ |
| Jan. 12, 1950 | Hilex | 46¼¢ per gallon | 45¢ |
| Oct. 20, 1949 | Lux | 19.56¢ per 3 bars | 20¢ |

The answer of the defendant denied generally the allegations of the complaint, and the record shows that the defendant introduced no evidence in his behalf. All of the defendant's retail prices listed above are less than the minimum markup of six per cent required by sec. 100.30 (2) (a), Stats., to be added as cost of doing business to the invoice or replacement cost.

The defendant was subpoenaed to testify in an investigation before the state department of agriculture on February 19, 1950, and before testifying he claimed immunity under the provisions of sec. 93.17, Stats. At the trial of this action, the plaintiff called the defendant adversely and he was compelled to testify over his objection that he was being forced to incriminate himself. The court ruled that the defendant had been granted immunity pursuant to the provisions of sec. 93.17 and ordered him to answer all questions material to the action.

So far as material here, sec. 100.30, Stats., provides as follows:

"(1) *Policy.* The practice of selling certain items of merchandise below cost in order to attract patronage is generally a form of deceptive advertising and an unfair method of competition in commerce. Such practice causes commercial dislocations, misleads the consumer, works back against the

farmer, directly burdens and obstructs commerce, and diverts business from dealers who maintain a fair-price policy. Bankruptcies among merchants who fail because of the competition of those who use such methods result in unemployment, disruption of leases, and nonpayment of taxes and loans, and contribute to an inevitable train of undesirable consequences, including economic depression.

"(2) *Definitions.* When used in this section unless context otherwise requires:

"(a) 'Cost to retailer' means the invoice cost of the merchandise to the retailer within thirty days prior to the date of sale, or replacement cost of the merchandise to the retailer, whichever is lower; less all trade discounts except customary discounts for cash; to which shall be added freight charges not otherwise included in the invoice cost or the replacement cost of the merchandise as herein set forth, and cartage to the retail outlet if done or paid for by the retailer, which cartage cost, in the absence of proof of a lesser cost, shall be deemed to be three fourths of one per cent of the cost to the retailer as herein defined after adding thereto freight charges but before adding thereto cartage and markup and a markup to cover a proportionate part of the cost of doing business, *which markup, in the absence of proof of a lessor cost, shall be six per cent of the cost to the retailer as herein set forth* after adding thereto freight charges and cartage but before adding thereto a markup. (Italics ours.) . . .

"(3) *Illegality of loss leaders.* Any advertising, offer to sell, or sale of any item of merchandise either by retailers or wholesalers, at less than cost as defined in this section and any advertising, offer to give, or gift of any item of merchandise contingent upon the sale of any other item of merchandise, with the intent, or effect of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor, impairs and prevents fair competition, injures public welfare, and is unfair competition and contrary to public policy and the policy of this section.

"(4) *Penalties.* Any retailer who, with the intent of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor or otherwise injuring a competitor, shall advertise, offer to sell, or sell at retail any item of merchandise at less than cost to the retailer as defined in this section; or any wholesaler who, with the intent of

inducing the purchase of other merchandise or of unfairly diverting trade from a competitor or otherwise injuring a competitor, shall advertise, offer to sell, or sell at wholesale any item of merchandise at less than cost to the wholesaler as defined in this section, shall be fined not less than $50, nor more than $500 for the first offense and not less than $200 nor more than $1,000 for the second and each subsequent offense, or, for each offense, imprisoned not less than one month nor more than six months, or both. Evidence of any advertisement, offer to sell, or sale of any item of merchandise by any retailer or wholesaler at less than cost as defined in this section shall be *prima facie* evidence of intent to induce the purchase of other merchandise, or to unfairly divert trade from a competitor, or to otherwise injure a competitor.

"(5) *Special remedy.* In addition to the penalties provided, the courts of this state are invested with jurisdiction to prevent and restrain violations of this section, and it shall be the duty of the several district attorneys to institute proceedings in equity to prevent and restrain violations. Any person damaged, or who is threatened with loss or injury, by reason of a violation of this section, shall be entitled to sue for and have injunctive relief in any court of competent jurisdiction against any damage or threatened loss or injury by reason of a violation hereof.

"(6) *Exceptions.* The provisions of this section shall not apply to sales at retail or sales at wholesale where:

"(a) Merchandise is sold in *bona fide* clearance sales, if advertised, marked, and sold as such;

"(b) Perishable merchandise must be sold promptly in order to forestall loss;

"(c) Merchandise is imperfect or damaged or is being discontinued and is advertised, marked, and sold as such;

"(d) Merchandise is sold upon the final liquidation of any business and is advertised, marked, and sold as such;

"(e) Merchandise is sold for charitable purposes or to relief agencies;

"(f) Merchandise is sold on contract to departments of the government or governmental institutions;

"(g) The price of merchandise is made in good faith to meet competition;

"(h) Merchandise is sold by any officer acting under the order or direction of any court."

Appellant has expressed a disapproval of the policy of the statute. The economic desirability of laws is exclusively a legislative concern.

"In entering upon a consideration of the questions raised upon this appeal, we may appropriately repeat, what has been said many times before, that under our system of government the court is not called upon to consider the economic, social, and political matters dealt with in the act. Whatever conclusion may be reached as the result of our deliberation, it in no way involves the determination by the court of the social value of the objectives sought." *Gibson Auto Co. v. Finnegan* (1935), 217 Wis. 401, 406, 259 N. W. 420. See also *Wholesale T. Dealers v. National C. & T. Co.* (1938), 11 Cal. (2d) 634, 82 Pac. (2d) 3.

Appellant's next contention is that the statute is an arbitrary and unreasonable attempt to exercise the police power of the state.

The police power, which is about all the power that sovereign government has, aside from its power of eminent domain and taxation, is not limited to protection of public health, morals, and safety. It extends also to economic needs. The benefit to be derived from the enactment of a statute under the authority of legislative police power is primarily a question for determination of the legislature and its determination will not be set aside unless it manifestly appears to be an arbitrary one and based on no substantial ground.

Statutes of other states similar to sec. 100.30, Stats., have been held a constitutional exercise of the police power. Courts have said that the declaration of the legislature that sales below cost under certain circumstances are an economic evil is conclusive and that the means employed to prevent them were reasonably adapted. *Wholesale T. Dealers v. National C. & T. Co., supra; Moore v. Northern Ky. Food*

*Dealers Asso.* (1941), 286 Ky. 24, 149 S. W. (2d) 755, 759; *Associated Merchants v. Ormesher* (1939), 107 Mont. 530, 86 Pac. (2d) 1031; *State v. Langley* (1938), 53 Wyo. 332, 84 Pac. (2d) 767; *McElhone v. Geror* (1940), 207 Minn. 580, 292 N. W. 414.

Sec. 100.30, Stats., does not forbid all sales below cost, but only those made with the intent of committing the trade devices it has determined unfair and harmful and is a constitutional exercise of the state police power.

The pertinent provision in sec. 100.30 (4), Stats., reads as follows:

"Evidence of any advertisement, offer to sell, or sale of any item of merchandise by any retailer or wholesaler at less than cost as defined in this section shall be *prima facie* evidence of intent to induce the purchase of other merchandise, or to unfairly divert trade from a competitor, or to otherwise injure a competitor."

That provision, like other parts of the statute, has been amended since the decision in *State v. Twentieth Century Market* (1940), 236 Wis. 215, 219, 294 N. W. 873. Formerly, the plaintiff, to make out a *prima facie* case, was required to prove that the advertising or sale below cost was done "in contravention of the policy of this section." For that reason the court held that the state had not established a *prima facie* case by merely showing that the prohibited sales took place, but must, in addition, show injurious results occurring as a consequence. The statute was amended and it is now clear that the plaintiff may establish *prima facie* evidence of intent by proof of advertising or sale of items below cost. The burden of going forward with the evidence then shifts to the defendant.

We cannot agree with appellant that this presumption in favor of the plaintiff is unreasonable or that it amounts to a conclusion of guilt. Sec. 100.30 (6), Stats., enumerates eight exceptions available to him and, in addition, he can

show that his cost of doing business is less than the statutory figure of six per cent. There is nothing in the statute to indicate that defenses not expressly provided may not be raised. It was stated in *People v. Pay Less Drug Store* (1944), 25 Cal. (2d) 108, 113, 153 Pac. (2d) 9:

"Furthermore, an injurious effect is not an essential element of the violation. The violation is complete when sales below cost are made with the requisite intent and not within any of the exceptions. Proof of injurious effect is permitted to be shown with the proof of sales below cost as presumptive or *prima facie* evidence that the requisite intent existed. The obvious and only effect of this provision is to require the defendants to go forward with such proof as would bring them within one of the exceptions or which would negative the *prima facie* showing of wrongful intent. They may present facts showing that they were within the express exceptions regardless of actual intent; or they may introduce evidence of another necessity not expressly included to show that sales were made in good faith and not for the purpose of injuring competitors or destroying competition.

"It is unnecessary here to consider the defendants' suggestions of circumstances other than the expressly designated exceptions, which would justify sales below cost and negative the *prima facie* showing of unlawful intent. The defendants introduced evidence solely in an attempt to bring themselves within exception (d), which permitted them to make sales below cost in an endeavor in good faith to meet the legal prices of their competitors."

The plaintiff established herein that the defendant had advertised or sold items of merchandise below cost, and the defendant did not offer any evidence in his behalf to show that he did not intend to violate the statute. In the absence of a showing to the contrary, it can be concluded that a merchant selling certain goods below cost fixed by statute does so with the intent of violating the statute.

A similar statutory provision was held valid in *Kreutzer v. Westfahl* (1925), 187 Wis. 463, 478, 204 N. W. 595.

See also *Bandini Co. v. Superior Court* (1931), 284 U. S. 8, 18, 52 Sup. Ct. 103, 76 L. Ed. 136.

The legislature provided the defendant with abundant opportunities to overcome the evidence of the plaintiff and to establish his innocence.   Since the defendant herein offered no evidence on his behalf, the equity court properly found against him under the statute.

*People v. Pay Less Drug Store, supra,* distinguishes *Great Atlantic & Pacific Tea Co. v. Ervin* (D. C. 1938), 23 Fed. Supp. 70, also relied on by the defendant herein (p. 115) :

"That case involved a section in a Minnesota statute providing that sales by a retailer at less than ten per cent above manufacturers' published list prices less published discounts should be *prima facie* evidence of a violation of the act.   It was held that such sales could not be presumptive evidence of guilty intent because guilty intent did not rationally follow merely from the fact of sales under ten per cent above list, and that the proof required of the defendant placed upon him a hardship which was regarded as outweighing the advantage to the state.   That case did not involve a provision comparable to that contained in our statute.   There the *prima facie* showing resulted where sales were made below an arbitrary percentage above list, regardless of actual cost or injurious effect.   The conclusion in that case would probably have been otherwise if the Minnesota statute had been similar to the California act.   That assumption is justified in view of the fact that the Minnesota statute was subsequently amended to cure the manifest defects and as amended was upheld in *McElhone v. Geror,* 207 Minn. 580, 292 N. W. 414."

*Englebrecht v. Day* (1949), 201 Okla. 585, 208 Pac. (2d) 538, and *Loughran Co. v. Lord Baltimore Candy & Tobacco Co.* (1940), 178 Md. 38, 12 Atl. (2d) 201, involve the constitutionality of statutes which, like sec. 100.30 (4), Stats., before its amendment by ch. 75, Laws of 1941, made sales below cost illegal if done with "the intent or effect" of bringing about the injurious consequences.   Sec. 100.30 (4)

now requires the plaintiff to prove "intent" and he no longer has the alternative of showing mere "effect."

The record does not show that the defendant in his answer or at trial challenged the validity of sec. 100.30 (4), Stats. The plaintiff, therefore, did not have an opportunity to meet this objection. The question cannot be raised here for the first time. *State v. Retail Gasoline Dealers Asso.* (1950), 256 Wis. 537, 545, 41 N. W. (2d) 637.

As stated previously, the defendant was subpoenaed and examined in a proceeding before the state department of agriculture on February 19, 1950, and was granted immunity under sec. 93.17, Stats. This statute does not prevent the plaintiff from examining in other proceedings the witness who has acquired immunity under it. It does, however, prohibit prosecuting or subjecting him to any penalty or forfeiture.

The remedy sought herein was for a judgment enjoining and restraining the defendant from further violating the provisions of sec. 100.30, Stats. Sec. 93.17 does not grant immunity from an injunction.

The defendant finally contends that the action to enjoin him deprived him of his right to a jury trial. It is a general rule that parties to an equity action are not entitled to a jury trial of the issues of fact arising in a proceeding to obtain an injunction. 50 C. J. S., Juries, p. 749, sec. 35; 31 Am. Jur., Jury, p. 566, sec. 17.

The judgment of the trial court is hereby affirmed.

*By the Court.*—Judgment affirmed.

GEHL, J. (*dissenting*). I consider that sec. 100.30, Stats., is unconstitutional. Statutes similar in context and effect were adopted by a considerable number of states during the 1930s, when the country was much concerned over the fact that prices were generally and constantly declining. It is too late to argue that economic conditions and the threat of their effect upon the public did or did not warrant the adop-

tion of these statutes and justify or require the courts to determine that the legislative bodies in the exercise of their police power properly enacted them. Despite all that is said in the judicial pronouncements to the effect that the purpose of such legislation was to prevent the development and growth of monopoly, the fact is, and it is generally known, that its real purpose was to halt the then continuing drop in prices. It was thought by the legislatures that an economic emergency existed and, recognizing that fact, the courts quite generally sanctioned their enactments as a proper exercise of the police power as emergency measures.

These statutes were approved by the courts as *emergency* measures, acts whose prime purpose was to effect a healthier economic condition and thereby relieve the public from a then existing exigency. In fact, it is so stated in the California and Montana statutes which declare the act "to be an urgency measure for the immediate preservation of the public peace, etc."

The threat of serious consequences arising from a decline in prices has long since disappeared. It requires no citation of authorities or the opinions of economic experts to demonstrate that fact. The emergency which called for the legislation and induced the courts to sustain it has disappeared. There has appeared in its stead an enormous rise in the cost of all commodities, recognized by all those concerned with the economic affairs as a threat just as serious to the welfare of our people as was that of the 1930s.

If, as so often has been said, the constitution is a living thing and that it must be construed in the light of change, it does not follow that once construed to meet the changed conditions we must continue to accept such construction when a later change appears. If the constitution is an elastic instrument, after it has been once stretched it must be permitted to restore or adjust itself to a new condition.

In discussing the police power of the state it is often said that what was at one time regarded as an improper exercise

of the police power may now, because of changed living conditions, be recognized as a legitimate exercise of that power. If that be true it is also true that what might at one time have been regarded as a proper exercise of the police power must now, because of living and economic conditions changed again, be recognized as an improper exercise of that power. To be consistent the application of the police power and the extent to which it is to be exercised must be measured by present-day conditions.

If it is true as we said in *Hanauer v. Republic Building Co.* 216 Wis. 49, 255 N. W. 136, 256 N. W. 784, that a law enacted as an emergency measure should not be interpreted as surviving the emergency, and the law is sustained as an emergency measure, certainly we should not prolong its life to extend beyond the period of the emergency. If we may sustain a law because of changed conditions, must we refuse to recognize a subsequent change? If declining prices in the 1930s were properly held to warrant the sanction of laws designed primarily to protect those who suffered most as a result of the trend, those engaged in commerce who were threatened with bankruptcy and ruin, then should we not recognize that the present rise in prices seriously affects all persons, the consumers, and declare that the public welfare no longer requires legislation to maintain prices?

"The constitution does not secure to anyone liberty to conduct his business in such fashion as to inflict injury upon the public at large, or upon any substantial group of the people." *Nebbia v. New York* (1934), 291 U. S. 502, 538, 54 Sup. Ct. 505, 78 L. Ed. 940.

I am authorized to say that Mr. Justice HUGHES concurs in this dissent.