Donald H. TESKER, Marlene E. Tesker, Richard H. Tesker and Pamela M. Tesker, Plaintiffs-Respondents,

v.

TOWN OF SAUKVILLE, Defendant,

Daniel GUTE, as Chairperson of the Town Board of Saukville, Defendant-Appellant,

Daniel GUTE, in his individual capacity, Intervening Defendant-Appellant.

Court of Appeals

*No. 96–1316. Submitted on briefs January 22, 1997.—Decided February 12, 1997.*

(Also reported in 561 N.W.2d 338.)

On behalf of the defendant-appellant and intervening defendant-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Andrea Roschke* of *Weiss, Berzowski, Brady & Donahue* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Robert A. Teper* and *Gary A. Ahrens* of *Michael Best & Friedrich* of Milwaukee.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

ANDERSON, J. Daniel Gute, Chairperson of the Town Board of Saukville, appeals from a judgment of mandamus directing him to take all of the necessary steps to cause an amendatory ordinance to become effective. Gute challenges the circuit court's conclusion that under the zoning ordinance a unanimous vote of the Town Board was not required to pass an amend-

ment to a procedural provision of the ordinance. We affirm because both the context of the ordinance and common sense support the determination of the circuit court.

The Town of Saukville has adopted the TOWN OF SAUKVILLE, WIS., ZONING ORDINANCE (1991) (the ordinance) under §§ 60.62(1) and 61.35, STATS. A provision in the zoning ordinance establishes the vote of the Town Board needed to accept or reject recommendations from the Town of Saukville Plan Commission:

10.6 TOWN BOARD'S ACTION

Following such hearing and after careful considera-tion of the Town Plan Commission's recommendation, the Town Board shall vote on the passage of the proposed change or amendment.
The Town Plan Commission's Recommenda-tion may only be overruled by the *unanimous* vote of the full Town Board's membership. [Emphasis added.]

Prior to October 17, 1995, an amendatory ordi-nance to reduce the vote needed for a simple majority was introduced and referred to the Plan Commission. The amendatory ordinance provided:

10.6 TOWN BOARD'S ACTION

Following such hearing and after careful considera-tion of the Town Plan Commission's recommendation, the Town Board shall vote of the passage of the proposed change or amendment.
The Town Plan Commission's Recommenda-tion may be overruled by the *majority* vote of the full Town Board's membership. [Emphasis added.]

The Plan Commission recommended against pas-sage of the amendatory ordinance. At the October 17,

1995, meeting of the Town Board, all three members of the Town Board were present and voted on the amendatory ordinance. Two supervisors voted to approve the amendment. Gute voted against passage. Acting as Chairperson of the Town Board, Gute refused to rule that the amendment had been passed. Gute ruled that under the terms of the ordinance, a unanimous vote of the Town Board was required to override the Town Plan Commission's recommendation to reject the amendatory ordinance.

Donald H. Tesker, Marlene E. Tesker, Richard H. Tesker and Pamela M. Tesker (Tesker) commenced this action seeking a writ of mandamus ordering Gute to rule that the amendment had passed or, in the alternative, a declaratory judgment that ORDINANCE § 10.6 was null and void. In granting Tesker's motion for summary judgment and issuing a judgment of mandamus, the circuit court found:

> By its terms, the unanimity requirement of the existing Section 10.6 of the Town's Ordinance did not apply to the October 17 vote and did not require that the proposed ordinance would not pass unless it received the favorable vote of all three supervisors.

On appeal, Gute contends that interaction of the introductory language of ORDINANCE § 10.1 and the unanimous vote requirement of ORDINANCE § 10.6 apply to all changes to the ordinance, including the zoning map, substantive land use provisions, and procedural requirements.

ORDINANCE § 10.1 provides:

> Whenever the public necessity, convenience, general welfare or good zoning practice require, the Town Board may, by ordinance, change the district

boundaries or amend, change or supplement the regulations established by this Ordinance or amendments thereto.

Gute argues that the entire document contains the regulations established by the zoning ordinance and that the pertinent regulations are both substantive and procedural. Gute takes issue with the trial court's unspoken conclusion that the unanimity requirement only applies to substantive provisions of the ordinance. He does not find any distinction in the ordinance between substantive and procedural regulations and he asserts that there is no plain language in ORDINANCE § 10.6 which indicates that the vote needed to enact a procedural amendment is any different than that needed to enact a substantive amendment.

Tesker's response makes a distinction between substantive and procedural regulations; Tesker maintains that common dictionary definitions of the word "regulations" "includes only restrictions on the use of property within the Town." Tesker explains that in other parts of the ordinance "regulate" or "regulation" refer only to restrictions on the land and not to any procedural aspects of the zoning code. Tesker reaches the conclusion that the vote needed to accept or reject a recommendation is a political question and the Plan Commission lacks the authority to make recommendations on political issues.

This case is about the meaning of various sections of the ordinance. The meaning of an ordinance is a question of law that we independently decide. *See First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). The rules for the construction of statutes and ordinances are the same.

*See County of Columbia v. Bylewski*, 94 Wis. 2d 153, 169 n.7, 288 N.W.2d 129, 137 (1980).

We have repeatedly said that "the aim of all statutory construction is to discern the intent of the legislature." *Green Bay Packaging, Inc. v. DILHR*, 72 Wis. 2d 26, 35, 240 N.W.2d 422, 428 (1976). If the statute is unambiguous, judicial rules of construction are not used; thus, we must arrive at the legislature's intent by giving the language its ordinary and clear meaning. *See State ex rel. Milwaukee County v. Wisconsin Council on Criminal Justice*, 73 Wis. 2d 237, 241, 243 N.W.2d 485, 487 (1976). However, where one of several interpretations of a statute is possible, the court must ascertain the legislative intention from the language of the statute in relation to its scope, history, context, subject matter and object intended to be accomplished. *See State ex rel. First Nat'l Bank & Trust Co. v. Skow*, 91 Wis. 2d 773, 779, 284 N.W.2d 74, 77 (1979).

At issue is the meaning of the word "regulations" in ORDINANCE § 10.1. Gute and Tesker disagree as to the meaning to be given to the word. Gute interprets "regulations" to include both substantive and procedural provisions of the ordinance, while Tesker limits the interpretation of "regulations" to substantive provisions. A statute, or part of it, is ambiguous if it is capable of being understood by a reasonably well-informed person in more than one way.[1] The test is whether "well-informed persons" could have become

---

[1] A word or term which can reasonably be understood in more than one sense or can convey more than one meaning is ambiguous. *See Wisconsin Bankers Ass'n v. Mutual Sav. & Loan Ass'n*, 96 Wis. 2d 438, 450, 291 N.W.2d 869, 875 (1980).

confused. However, when a case comes before this court, it is obvious that people disagree as to the meaning to be given to a statute. This is not controlling. The court must determine whether "well-informed persons" could have become confused. *See Recht-Goldin-Siegal Constr., Inc. v. DOR*, 64 Wis. 2d 303, 306, 219 N.W.2d 379, 380 (1974). We conclude that as used in the ordinance "regulations" is ambiguous. "[A]n English word may have a variety of meanings and its precise meaning must be found in its context and relation to the subject matter." *Lukaszewicz v. Concrete Research, Inc.*, 43 Wis. 2d 335, 342, 168 N.W.2d 581, 585 (1969).

Our construction of the word "regulations" follows a well-known path. Where the language is capable of more than one interpretation, it must be read in a sense which harmonizes with the subject matter and the general purpose and object of the ordinance. *See Julius v. Druckrey*, 214 Wis. 643, 649, 254 N.W. 358, 361 (1934). In construing the ordinance, we will consider related sections in its interpretation. *See State v. Phillips*, 99 Wis. 2d 46, 50, 298 N.W.2d 239, 241 (Ct. App. 1980). Furthermore, the construction of the ordinance must give effect to its leading idea, and the entire ordinance should be brought into harmony with the ordinance's purpose. *See Pella Farmers Mut. Ins. Co. v. Hartland Richmond Town Ins. Co.*, 26 Wis. 2d 29, 41, 132 N.W.2d 225, 230 (1965). As we travel down this path, our considerations ought not leave "context" and "common sense" on the courthouse steps. *See State v. Clausen*, 105 Wis. 2d 231, 245-46, 313 N.W.2d 819, 826 (1982). We will address both.

We begin by examining the statute as a whole and in reference to other statutes dealing with the same general subject matter to discern the entire legislative

scheme. *See CH2M Hill, Inc. v. Black & Veatch*, 206 Wis. 2d 369, 377, 557 N.W.2d 829, 832 (Ct. App. 1996). The Town Board has the authority to exercise the powers given to village boards, *see* § 60.10(2)(c), STATS., and has enacted a comprehensive zoning ordinance under § 62.23, STATS. *See* §§ 60.62(1) and 61.35, STATS. Section 62.23 is the legislative grant to municipalities of broad powers to promote the general welfare of the community through zoning. The purpose of this broad grant of authority from the state is summarized in § 62.23(7)(c):

> *Purposes in view.* Such *regulations* shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air, including access to sunlight for solar collectors and to wind for wind energy systems; to encourage the protection of groundwater resources; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements; and to preserve burial sites, as defined in s. 157.70 (1) (b). Such *regulations* shall be made with reasonable consideration, among other things, of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city. [Emphasis added.]

Throughout § 62.23, STATS., the legislature directs that the purposes of zoning be achieved through "regulations" to be enacted by the municipality. For example, § 62.23(7)(a) is the general grant of power:

> [T]the council may *regulate* and restrict *by ordinance*, subject to par. (hm), the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, mining, residence or other purposes if there is no discrimination against temporary structures. [Emphasis added.]

In addition, through § 62.23(7)(b), the council is given the power to divide the city into districts and, "it may *regulate* and restrict the erection, construction, reconstruction, alteration or use of buildings, structures or land." (Emphasis added.) Further, "[a]ll such *regulations* shall be uniform." (Emphasis added.) *See id.* In the context of the enabling statutes it is clear that "regulations" refer only to substantive objectives of land use planning and management.

A review of the ordinance discloses that the words "regulation" or "regulate" are used only in conjunction with the substantive objectives of long-term land use planning and management. The Town's intent in implementing the ordinance is explained in ORDINANCE § 1.3:

> It is the general intent of this Ordinance to *regulate* and restrict the *use* of all structures, lands and waters; *regulate* and restrict lot coverage, population distribution and density, and the size and location of all structures. [Emphasis added.]

The Town's explanation of the purpose of conditional use permits in ORDINANCE § 4.1 uses the term "regulation" only in conjunction with land use planning and management:

The nature, character or circumstances of these [conditional] uses are so unique or so dependent upon specific contemporary conditions that predetermination of permissibility by right or the detailing in the ordinance of all of the specific standards, *regulations* or conditions necessary or appropriate to such permissibility is not practicable . . . . [Emphasis added.]

Finally, in the definition section, ORDINANCE § 11.2, a "basic district" is defined as "a part of parts of the Town for which the *regulation* of this Ordinance governing the use and location of land and buildings are uniform."[2] (Emphasis added.)

■

We conclude that the word "regulations" in the ordinance must be interpreted to mean the substantive provisions of the ordinance. As used in both § 62.23, STATS., and the ordinance, the word applies to use and site management and planning within the Town of Saukville. This interpretation harmonizes the subject matter and the general purpose and object of the enabling statute and the ordinance. Under the ordinance, amendments to "regulations" concerning the use and location of land and buildings are subject to the amendment procedures outlined in ORDINANCE § 10 of the ordinance, including referral to the Plan Commission for a recommendation and the requirement of a unani-

---

[2] The ordinance uses the words "regulation" or "regulate" in other sections: § 1.4, INTRODUCTION—ABROGATION and GREATER RESTRICTIONS; § 2.2 GENERAL PROVISIONS— COMPLIANCE; § 2.5 GENERAL PROVISIONS— USE RESTRICTIONS; § 2.6 GENERAL PROVISIONS—SITE RESTRICTIONS; § 9.4 BOARD OF ZONING APPEALS— POWERS—Interpretations; and § 9.7 BOARD OF ZONING APPEALS—FINDINGS—Preservation of Intent.

mous vote of the Town Board to overrule the recommendation. We determine that the amendment procedures of § 10, including the unanimity requirement of ORDINANCE § 10.6, do not apply to procedural provisions—provisions of the ordinance directing how the plan commission, the board of zoning appeals or the town board will conduct their affairs in fulfilling the purpose of the ordinance.

██

We now will use common sense to interpret the ordinance. The literal construction urged by Gute leads to an absurd and unreasonable result: the referral to the Plan Commission for approval of amendments to procedures governing how the Town Board, the legislative body that created the Plan Commission, will conduct its business. In construing an ordinance, we must adopt a construction not subject to such an infirmity; we must adopt a construction that will carry out the true purpose and intent of the legislature. *See State v. Retail Gasoline Dealers Ass'n,* 256 Wis. 537, 544, 41 N.W.2d 637, 641 (1950).

The purpose of a city plan commission is to develop and maintain a long-range plan relating to the location and use of land and buildings. *Scanlon v. City of Menasha,* 16 Wis. 2d 437, 443-44, 114 N.W.2d 791, 795 (1962), provides:

> While its functions may be advisory in many respects, it is an important function in municipal government if the municipality is to be developed in accordance with any long-term program of city improvement and if the city is to have a definite objective in its planning. The representatives of the public constituting the city council frequently change and some may not be aware of the long-term policies of the city. It is in the public interest that

each municipality have a long-term plan of development which should be adhered to unless the common council at any particular time desires to change it after being fully informed. Only by such method can any consistency in the plan of the future development of a city be achieved.

As an advisory body the Plan Commission is a creature of the Town Board and its powers are limited by the ordinance creating it and defining its authority. *See Ledger v. City of Waupaca*, 146 Wis. 2d 256, 263, 430 N.W.2d 370, 372 (Ct. App. 1988). The role and authority of the Town of Saukville Plan Commission is found in the ordinance and in § 62.23, STATS. The Town Board had latitude in creating the Plan Commission and defining its advisory role. The ordinance stands as the act of the legislative body of the Town, and it is hardly to be assumed that the Town Board intended to clothe a mere advisory agency with the power to veto the legislative acts of the Town Board. *See State ex rel. Tingley v. Gurda*, 209 Wis. 63, 67, 243 N.W. 317, 319 (1932).

Gute argues that the ordinance permits the Plan Commission to review the amendatory ordinance to ORDINANCE § 10.6; to make a recommendation on whether it should be accepted, rejected or modified, *see* § 10.4; and to require the unanimous vote of the Town Board to reject that recommendation. Gute seeks to have this court grant the Plan Commission veto power over the legislative body that created it. *See Ledger*, 146 Wis. 2d at 265, 430 N.W.2d at 373. Courts must look to the common-sense meaning of a statute to avoid unreasonable and absurd results. *See Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 766, 300 N.W.2d 63, 71 (1981). To adopt Gute's argument we would have to adopt a statutory construction in derogation of com-

mon sense. Because statutes cannot be construed in derogation of common sense, we affirm the circuit court.

*By the Court.*—Judgment affirmed.