HILLSIDE TRANSIT COMPANY and others, Respondents, vs. LARSON, Commissioner, Appellant.

*January 4—February 2, 1954.*

572

For the appellant there were briefs by the *Attorney General* and *Harold H. Persons* and *E. Weston Wood,* assistant attorneys general, and oral argument by *Mr. Persons* and *Mr. Wood.*

For the respondents there was a brief and oral argument by *Claude J. Jasper* and *Clifford G. Mathys,* both of Madison.

A brief was filed by *Louis L. Croy* of Manitowoc, attorney, and *Douglas W. Milsap* of Shawano of counsel, for the

Wisconsin Fluid Dairy Products Haulers, Badger Consolidated Co-operative, and Western Condensing Company, as *amici curiae.*

A brief was filed by *Wilcox & Sullivan* of Eau Claire, for the Briggs Transfer Company, as *amicus curiae.*

CURRIE, J. The gravamen of the charge of unconstitutionality leveled against secs. 194.47 to 194.49, Stats. 1951, subjecting the plaintiff motor carriers to the payment of ton-mile taxes is that such statutes violate the equal-protection-of-the-law clauses of the Wisconsin constitution and the Fourteenth amendment to the United States constitution.

The constitutionality of the ton-mile tax as enacted by ch. 454, Laws of 1931, was unsuccessfully challenged before this court in *State ex rel. Wisconsin Truck Owners Asso. v. Public Service Comm.* (1932), 207 Wis. 664, 242 N. W. 668, on the ground that there was a denial of equal protection of the laws because of alleged unjust and arbitrary classification and unjust and unreasonable exemptions, it being the determination of this court that said chapter was constitutional and valid. However, the plaintiff motor carriers contend that the exemptions contained in sec. 194.47, Stats. 1951, are so more extensive and different in character from the exemptions provided in the 1931 act, that our decision in the *State ex rel. Wisconsin Truck Owners Asso. Case, supra,* is not controlling in the instant case.

It is true that extensive changes have been made in the statutes imposing the ton-mile tax upon motor carriers since the enactment of the original ton-mile tax law in 1931. Such changes have not been the result of any single legislature's action but are traceable through a long series of session laws which amended (in some cases by repeal and re-creation) the 1931 statutes, whose validity was upheld in the *State ex rel. Wisconsin Truck Owners Asso. Case, supra.* The 1931 ton-mile tax statutes provided for four types of

exemptions which are set forth in the left-hand column below, while in the right-hand column opposite thereto are set forth the exemption provisions of the 1951 statutes which correspond thereto:

| *1931 Exemptions* | *1951 Exemptions* |
|---|---|
| "Motor vehicles in single units, or in combinations with other motor vehicles or trailers or semitrailers where the aggregate weight of such units or combinations does not exceed three tons."— Sec. 194.16 (1) (a). | "Operations of motor vehicles which have a gross weight of less than 8,000 pounds and which are not operated in conjunction with other vehicles as a unit having an aggregate combined gross weight of 8,000 pounds or more."—Sec. 194.47 (1). |
| "Motor vehicles, trailers, or semitrailers owned or operated by the state or any political subdivision thereof."—Sec. 194.16 (1) (b). | "Motor vehicles owned by the United States, any state, or any political subdivision thereof."—Sec. 194.05 (1). |
| "Motor vehicles, trailers, or semitrailers used or operated exclusively in transporting or delivering dairy or other farm products between the point of production and the primary market."—Sec. 194.16 (1) (c). | "Operations of motor vehicles which, . . . are engaged exclusively in any or all of the following operations: |
| | "(a) Transportation of fluid milk or cream, livestock or raw cheese. |
| | "(b) Transportation of butter, dairy products or unmanufactured agricultural or forest products or manufactured or burned clay or burnt limestone products immediately and directly from point of production or transportation to farms of materials, supplies, or equipment for use |

"Motor vehicles, trailers, and semitrailers operated within the limits of an incorporated village or city."—Sec. 194.16 (1) (d).

thereon, and the transportation by private motor carriers of farm machinery and parts of farm machinery."—Sec. 194.47 (5). "Operations of motor vehicles which, . . . are engaged exclusively in transportation entirely within one municipality and municipalities contiguous thereto."—Sec. 194.47 (2).

In addition to the exemptions set forth in the right-hand column above, the 1951 ton-mile tax statutes also provided for three other types of exemptions which will be referred to later in this opinion.

The plaintiff carriers raise no issue as to the changes made in the 1951 exemption statutes relating to government-owned vehicles and eliminating from tax all vehicles having a gross weight of less than 8,000 pounds. They do, however, severely attack the extensive broadening of the so-called "farmers' exemption" and the extension of the exemption formerly granted to vehicles operating within the limits of an incorporated village or city so as to include those vehicles that engage exclusively in transportation entirely within one municipality and the municipalities contiguous thereto.

Plaintiffs contend that the 1931 "farmers' exemption" was intended to cover the relatively short hauls made by farmers from the farm to the primary market, so for all practical considerations the exemption was limited to the farmer himself, while the exemption contained in sec. 194.47 (5), Stats. 1951, has converted this into a "commodity exemption" because applicable to the hauling of any of the following specified products:

Fluid milk
Cream
Livestock
Raw cheese
Butter
Dairy products
Unmanufactured agricultural products
Forest products
Manufactured or burned clay products
Manufactured or burnt limestone products
Materials, supplies, or equipment for use on farms
Farm machinery and parts of farm machinery transported
   by private motor carriers.

From the standpoint of accuracy, it should be pointed out
that not all vehicles transporting the above-enumerated
products are exempted but only those *"engaged exclusively"*
in transporting the same, and, as to a large number of said
products, there is the further qualification that they must be
transported *"immediately and directly from point of production."*

Sec. 194.50, Stats. 1951, states that the ton-mile tax is
levied and assessed as "partial compensation for the maintenance, repair, and construction of the public highways." It
is plaintiffs' position, that because the ton-mile tax is so
imposed as partial compensation for the maintenance, repair,
and construction of the public highways of the state, a commodity exemption necessarily contravenes such legislative
purpose and results in an arbitrary and unreasonable classification which constitutes a denial of the equal protection of
the laws.

In the opinion of this court written by Mr. Justice OWEN
in the *State ex rel. Wisconsin Truck Owners Asso. Case,
supra,* it was stated (pp. 673, 674) :

"The next challenged exemption is 'Motor vehicles, trailers, or semitrailers used or operated exclusively in trans-

porting or delivering dairy or other farm products between the point of production and the primary market.' This is obviously an exemption prompted by the state's consideration of one of its most basic industries and one upon which the prosperity of the state greatly depends. Not only this state, but the nation as well, has become solicitous concerning the stern realities facing the agricultural and agrarian population of the country. The economic pressure upon the farmers has given concern to all who realize that a well-balanced economic condition cannot lay out of consideration the welfare and the prosperity of the farmer. This fact finds ample illustration in the governmental favors extended to the farming classes which have recently been sustained by the courts, many of which were reviewed and pointed out in *Northern Wis. Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571, 197 N. W. 936. Where the general prosperity of the state is so interwoven with and dependent upon the prosperity of the farmer, the legislature, under the broad powers which it enjoys of selecting and classifying subjects for taxation, may very well relieve the farmer from a tax imposed upon those who make an extraordinary use of the highways. . . .

"This exemption rests upon a substantial basis. Our conclusion is that the statute is a valid enactment."

As the legislature has the right to exempt from the ton-mile tax vehicles operated by farmers in order to ameliorate their economic condition, there would seem to be no reason why a like tax exemption cannot be extended to assist other industries or occupations, such as the producers of forest products or the manufacturers of burned clay and burnt limestone products, if, in the wisdom of the legislature, it deems the same desirable.

The United States supreme court in *Brown-Forman Co. v. Kentucky* (1910), 217 U. S. 563, 573, 30 Sup. Ct. 578, 54 L. Ed. 883, stated:

"A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings,

businesses, or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law."

The case of *Quong Wing v. Kirkendall* (1912), 223 U. S. 59, 62, 32 Sup. Ct. 192, 56 L. Ed. 350, involved an action to recover $10 paid under duress and protest for a license to do hand-laundry work. Steam laundries were exempted under the state statute imposing such license fee. The validity of such license fee was upheld by the United States supreme court against the challenge that it violated the equal-protection-of-the-laws clause of the Fourteenth amendment. Mr. Justice HOLMES, speaking for the court, declared:

"A state does not deny the equal protection of the laws merely by adjusting its revenue laws and taxing system in such a way as to favor certain industries or forms of industry. Like the United States, although with more restriction and in less degree, a state may carry out a policy, even a policy with which we might disagree. . . . It may make discriminations, if founded on distinctions that we cannot pronounce unreasonable and purely arbitrary, . . . *If the state sees fit to encourage steam laundries and discourage hand laundries that is its own affair.*" (Emphasis supplied.)

Likewise the United States supreme court in *Great Atlantic & Pacific Tea Co. v. Grosjean* (1937), 301 U. S. 412, 426, 57 Sup. Ct. 772, 81 L. Ed. 1193, stated:

"Taxation may be made the implement of the exercise of the state's police power; and proper and reasonable discrimination between classes to promote fair competitive conditions and to equalize economic advantages is therefore lawful."

One basis for sustaining the Wisconsin legislature's exemption of trucks exclusively transporting such products

as fluid milk, cream, livestock, and raw cheese from payment of the ton-mile tax would be to assume that the legislature has determined that anything which lessens the cost of transportation of such products would be reflected in higher prices received by the farmers for their dairy products and livestock. The briefs *amici curiae* filed herein in behalf of the Wisconsin Fluid Dairy Products Haulers, the Badger Consolidated Co-operative, and the Western Condensing Company, advance persuasive reasons, and set forth statistics, in support of such theory. It is not for this court to determine the truth or error of the economic theory so advanced. *Gibson Auto Co. v. Finnegan* (1935), 217 Wis. 401, 406, 259 N. W. 420.

In passing upon the constitutionality of the exemption of these particular products we must assume that the legislature determined that such exemptions would be of direct economic benefit to the agricultural population, thereby indirectly benefiting the citizens of the state as a whole. We, therefore, are not prepared to hold that the resulting classification was arbitrary or unreasonable because it is not the role of the court to determine economic policy. That is a legislative and not a judicial function.

Both the learned trial judge, in his extremely able memorandum opinion, and the brief of the plaintiffs filed on this appeal, rely strongly on the decision of the United States supreme court in *Smith v. Cahoon* (1931), 283 U. S. 553, 51 Sup. Ct. 582, 75 L. Ed. 1264, as authority for the principle that a commodity exemption, as applied to a tax imposed as partial compensation for the maintenance and construction of public highways, is unconstitutional because resulting in an arbitrary classification which is repugnant to the equal-protection clause of the Fourteenth amendment.

In *Smith v. Cahoon, supra,* Smith was arrested for having operated a vehicle upon Florida highways without having the certificate of public convenience and necessity, and with-

out having paid the tax, required by the statute of Florida. At the preliminary hearing, Smith challenged the validity of the statute, as applied to him, on the ground that it was repugnant to the Fourteenth amendment, and, upon being held for trial, he instituted *habeas corpus* proceedings against the sheriff. Smith was a private motor carrier employed under an exclusive contract by the Atlantic & Pacific Tea Company in hauling its merchandise from Jacksonville to various places in Florida, and he never held himself out to be a common carrier. The Florida statute provided that, in order to qualify for a certificate of public convenience and necessity, a carrier was required to furnish a bond for the protection of the freight carried and of the public against injuries received through negligence of the carrier. The United States supreme court held the Florida statute unconstitutional and void for two reasons. The first reason was that it attempted by legislative fiat to make a common motor carrier out of a private motor carrier. The second ground for so holding the act invalid was that vehicles carrying certain commodities were exempted from the provision of the act requiring the furnishing of said bond. The basis of the court's decision on such last-mentioned ground was well set forth in the words of Mr. Chief Justice HUGHES as follows (283 U. S. 567):

"In the present instance, the regulation as to the giving of a bond or insurance policy to protect the public generally, in order to be sustained, must be deemed to relate to the public safety. This is a matter of grave concern as the highways become increasingly crowded with motor vehicles, and we entertain no doubt of the power of the state to insist upon suitable protection for the public against injuries through the operations on its highways of carriers for hire, whether they are common carriers or private carriers. But in establishing such a regulation, there does not appear to be the slightest justification for making a distinction between those who carry for hire farm products, or milk or butter, or fish

or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities. So far as the statute was designed to safeguard the public with respect to the use of the highways, we think that the discrimination it makes between the private carriers which are relieved of the necessity of obtaining certificates and giving security, and a carrier such as the appellant, was wholly arbitrary and constituted a violation of the appellant's constitutional right. 'Such a classification is not based on anything having relation to the purpose for which it is made.' [Citing cases.]"

However, *Smith v. Cahoon, supra,* as an authority for the principle, that commodity exemptions in statutes imposing taxes upon motor carriers transgress the equal-protection-of-the-laws clause of the Fourteenth amendment, has been greatly weakened by subsequent decisions of the United States supreme court, and in particular that of *Aero Mayflower Transit Co. v. Georgia Public Service Comm.* (1935), 295 U. S. 285, 288, 55 Sup. Ct. 709, 79 L. Ed. 439. Such case involved an action to enjoin the public service commission of Georgia from enforcing an annual tax or fee on private motor carriers for hire. Plaintiff was a private carrier for hire engaged in the transportation of household and office furniture between points in Georgia and other states. The exception which was most severely attacked was one which exempted vehicles engaged exclusively in the transportation of agricultural or dairy products, whether the " 'vehicle is owned by the owner or producer of such agricultural or dairy products or not, so long as the title remains in the producer.' " The court, in rendering its opinion, held that a classification designed to ameliorate the lot of the producers of farm and dairy products is not an arbitrary preference within the meaning and condemnation of the Fourteenth amendment. In distinguishing the case of *Smith v. Cahoon, supra,* Mr. Justice CARDOZO, speaking for the court, stated (295 U. S. 293):

"How far it [the legislature] may relieve a special group of carriers from the filing of a bond for the safety of the public, may depend on very different considerations, as, for instance, the extent or regularity of the traffic thus excepted. This will vary from state to state. The excepted carriers in Florida did business, it seems, 'between fixed termini or over a regular route.' *Smith v. Cahoon,* 283 U. S. at p. 566. There is nothing in the present record to advise us as to the extent or regularity of traffic in farm and dairy products by carriers in Georgia. Be that as it may, *exemption from a tax stands upon a different footing, though the purpose of the tax is the upkeep of the highway. At such times the legislature may go far in apportioning and classifying to the end that public burdens may be distributed in accordance with its own conception of policy and justice. If its action be not arbitrary, the courts will stand aloof.*" (Emphasis supplied.)

As we interpret the distinction made by the United States supreme court between its holding in the *Aero Mayflower Transit Co. Case, supra,* and that in *Smith v. Cahoon, supra,* it is that a legislature has much more leeway in granting exemptions in taxation measures than it does in regulatory measures under its police power without running athwart the equal-protection-of-the-laws clause of the Fourteenth amendment. This is so even though the taxation statutes may impose a tax which is exacted because of use of public highways.

For cases holding valid commodity exemptions in statutes imposing a tax upon motor carriers for the use of public highways, see: *McReavy v. Holm* (1926), 166 Minn. 22, 206 N. W. 942; *Rodgers v. Nebraska State R. Comm.* (1938), 134 Neb. 832, 279 N. W. 800; *East Tennessee & Western N. C. Motor Transportation Co. v. Carden* (1932), 164 Tenn. 416, 50 S. W. (2d) 230; *Southern Transfer Co. v. Harrison* (1930), 171 Ga. 358, 155 S. E. 338; *State ex rel. Rice v. Evans-Terry Co.* (1935), 173 Miss. 526, 159 So. 658, affirmed without opinion 296 U. S. 538, 56 Sup.

Ct. 126, 80 L. Ed. 383, rehearing denied 296 U. S. 663, 56 Sup. Ct. 177, 80 L. Ed. 473; and *Hicklin v. Coney* (1933), 290 U. S. 169, 54 Sup. Ct. 142, 78 L. Ed. 247.

We next turn to the exemption imposed in sec. 194.47 (2), Stats. 1951, exempting motor vehicles from tax which are engaged "exclusively in transportation entirely within one municipality and municipalities contiguous thereto" as contrasted to the exemption contained in sec. 194.16 (1) (d), Stats. 1931, exempting vehicles operating "within the limits of an incorporated village or city," which latter exemption was upheld in the *State ex rel. Wisconsin Truck Owners Asso. Case, supra.*

The United States supreme court in *Continental Baking Co. v. Woodring* (1932), 286 U. S. 352, 366, 52 Sup. Ct. 595, 76 L. Ed. 1155, upheld the validity of the Kansas Motor Vehicle Act imposing a ton-mile tax on motor carriers which exempted private motor carriers "operating within a radius of 25 miles beyond the corporate limits" of a city or village. In considering this exemption the court pointed out that such exemption applied particularly to delivery trucks, which in their daily routine operations necessarily crossed municipal limits, and that the legislature, in setting up such zone, would have to draw the line somewhere and unquestionably it had a broad discretion in so doing.

In *Mid-States Freight Lines, Inc., v. Bates* (1952), 279 App. Div. 451, 111 N. Y. Supp. (2d) 568, affirmed without opinion 304 N. Y. 700, 107 N. E. (2d) 603, a zonal exemption in the New York ton-mile tax statutes was also upheld, the court pointing out that motor vehicles engaged in making deliveries in such a zone chiefly use streets other than state highways.

We have no difficulty in upholding the exemption of the 1951 statute extending to motor vehicles "engaged exclusively in transportation entirely within one municipality and municipalities contiguous thereto." Its obvious objective

was to exempt trucks making short-distance deliveries, which vehicles would travel largely over city streets and town roads rather than on state and county trunk highways. There is nothing arbitrary or unreasonable in such a classification inasmuch as a logical basis exists therefor.

In addition to the exemptions contained in the 1951 ton-mile tax statutes already discussed, all of which could be upheld by analogy upon the reasoning employed by this court in its decision in the *State ex rel. Wisconsin Truck Owners Asso. Case, supra,* decided in 1932, the legislature over the years has added three other exemptions. These are to be found in subs. (3), (4), and (6) of sec. 194.47, Stats. 1951. Such subsections provide as follows:

"(3) Operations of motor vehicles used for the transportation of passengers which take place entirely within contiguous incorporated cities or villages and in municipalities contiguous to that in which the motor carrier has its principal place of business, or entirely within one municipality or municipalities contiguous thereto.

"(4) All motor vehicles equipped with dump bodies while engaged exclusively in the transportation of dirt, sand, gravel, stone, asphalt, cinders, ashes, or cement for highway and building construction and maintenance, not more than 20 miles from the point of loading, and all such motor vehicles while operated empty for the purpose of moving such vehicles from one location to another.

"(6) Any vehicle while performing transportation of property which due to the physical characteristics of the vehicle or load requires a permit under subsections (1) and (3) of section 85.53 and all necessary mileage of such vehicle incidental to such transportation."

The memorandum opinion of the trial court, and the brief of plaintiffs, particularly assail the validity of the "dump truck" exemption contained in sub. (4) and the "special-permit vehicle" exemption contained in sub. (6) of sec. 194.47, Stats. 1951. The 1931 ton-mile tax statutes

imposed a higher rate of tax on motor carriers of freight than those carrying passengers but such classification was specifically upheld by this court in its decision in the *State ex rel. Wisconsin Truck Owners Asso. Case, supra.* The zonal feature of the exemption imposed by sub. (3) of sec. 194.47, Stats. 1951, is not distinguishable from that of sub. (2) of sec. 194.47, Stats. 1951, hereinbefore discussed.

We find it unnecessary to pass upon the validity of the "dump truck" and "special-permit vehicle" exemptions because of our conclusion that, even if they were held to be invalid, such invalidity would only extend to such exemptions and not to the remainder of the act. The rule is well established that, if an amendment to a valid statute is attempted, and the amending act is invalid, the pre-existing statute remains in force because the attempted amendment, being invalid, is a nullity. *State v. Evans* (1907), 130 Wis. 381, 391, 110 N. W. 241; *Reliance Auto Repair Co. v. Nugent* (1915), 159 Wis. 488, 149 N. W. 377; *State ex rel. F. W. Woolworth Co. v. State Board* (1941), 237 Wis. 638, 641, 298 N. W. 183; *Reitz v. Mealey* (1941), 314 U. S. 33, 62 Sup. Ct. 24, 86 L. Ed. 21.

In an annotation in 66 A. L. R. 1483, it is stated as follows:

"It is a uniform rule that where there is a valid act and an attempted but unconstitutional amendment to it, the original act is not affected, but remains in full force and effect, even though there are express words of repeal, unless it is clear that the legislature intended such repeal."

We do not consider it to be material that, in amending the ton-mile tax statutes so as to broaden the extent of the existing exemptions, or to create new ones, the legislature employed the method of repeal and re-creation.

In the case of *Reitz v. Mealey, supra,* the validity of a section of the New York Vehicle and Traffic Law was

attacked as being void because in contravention of sec. 17 of the Federal Bankruptcy Act. It was claimed that certain amendments to such state statute had rendered the entire statute invalid. The district court determined that it was unnecessary to pass upon the validity of such amendments because, even if eliminated, the remainder of the statute would be valid. The United States supreme court approved such holding of the district court and stated (314 U. S. 38) :

"The court was of the view that if the amendments are invalid, as inconsistent with sec. 17 of the Bankruptcy Act, they are severable, and that the statute may stand as a complete act without them, since, under the law of New York, a statute, in itself constitutional, is not affected by an unconstitutional amendment;—the amendment dropping out and the original act remaining in force. Decisions of the highest court of the state are cited to this effect.

"These decisions hold that, *where the original and amending acts were enacted by different legislatures, it cannot be thought that the original act would not have been retained except for the amendments,* and this principle has been applied where the amending act declares, as it does in this instance, that the original act is 'amended to read as follows' and then contains a redraft of the entire act with the amendment inserted." (Emphasis supplied.)

The trial court, in holding the entire 1951 ton-mile tax statutes invalid, did so on the basis that the exemptions enacted into the statutes over the years by successive legislatures subsequent to our decision upholding the original statute in the *State ex rel. Wisconsin Truck Owners Asso. Case, supra,* had rendered the entire act unconstitutional. The memorandum opinion of the lower court stated:

"The exceptions in Wisconsin's ton-mile tax law have become the rule. The exceptions being in dominance, the rule sinks into obscurity. The court is under no duty to salvage a statute, of which 91.3 per cent by numbers and 75 per cent by volume has been gnawed away already."

Such conclusion seems to be directly contrary to the authorities hereinbefore cited holding that, where·a valid act exists and thereafter the legislature attempts to enact unconstitutional amendments thereto, the original act is not affected and remains in full force and effect.

The trial court gave great weight to the fact that 91.3 per cent of all motor carriers of the state were exempted from payment of the ton-mile tax as a result of the exemptions granted by the legislature. However, the percentage in the number of vehicles taxed or exempted without further evidence means little where use of the highways is an issue. Seven vehicles of specialized construction, such as milk tanks, traveling only two hours per day, might do less damage to the highways than one truck of the same weight operated by a common motor carrier with a crew of two men traveling sixteen hours per day. In *Mid-States Freight Lines, Inc., v. Bates, supra,* it was established that under the New York ton-mile tax law only two and one-half per cent of all trucks in the state of New York were required to pay ton-mile tax. Nevertheless, the New York court in that case upheld the validity of the law against the challenge to its validity charging that the exemptions constituted a denial of the equal protection of the laws.

The fact that the 1953 legislature has enacted a new ton-mile tax act supplanting the 1951 act does not render the present controversy moot. The plaintiffs and other carriers, upon the basis of the trial court's decision that the 1951 act was invalid, failed to pay a considerable amount of ton-mile taxes due under the 1951 act; and our decision herein upholding the validity of the 1951 act will have a direct bearing on the liability of said carriers to pay said taxes.

It is our considered judgment that secs. 194.47 to 194.49, Stats. 1951, as applied to the operation of plaintiffs' vehicles,

are not unconstitutional or void and therefore the complaint fails to state a cause of action.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.