SIMANCO, INC., Respondent, v. DEPARTMENT OF REVENUE, Appellant.*

*No. 333. Argued January 2, 1973.—Decided January 30, 1973.*
(Also reported in 203 N. W. 2d 648.)

* Motion for rehearing denied, without costs, on March 27, 1973.

48

For the appellant there was a brief by *Robert W. Warren,* attorney general; the cause was argued by *E. Weston Wood,* assistant attorney general.

For the respondent there was a brief by *Michael, Best & Friedrich,* attorneys, and *Frank J. Pelisek* and *John R. Sapp* of counsel, all of Milwaukee, and oral argument by *Mr. Pelisek.*

HEFFERNAN, J. During the administrative proceedings contesting the tax and in the circuit court, various defects, mostly of a constitutional nature, were asserted by Simanco. However, in finding the statute to be un-

constitutional, the circuit judge addressed himself to and based his decision only on the alleged denial of equal protection to a corporation when taxation is determined by a classification that is proportional to the nonresidency of its stockholders.

On this appeal it appears that the only issue briefed and argued is that of equal protection, and we rest our decision upon the resolution of that issue alone.

Sec. 71.337 (1), Stats., which was held unconstitutional by the circuit court is the successor statute to an earlier version enacted by the legislature in 1955. The 1955 statute (sec. 71.337 (1)) provided:

"(1) GENERAL RULE. If a corporation adopts a plan of complete liquidation, and within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

The bill jacket for ch. 571 of the Laws of 1955 (sec. 71.337 (1)) shows that the statute was enacted to bring the Wisconsin law into conformity with the recently enacted sec. 337 (a) of the Internal Revenue Code of 1954. The purposes that the Congress had in mind in enacting this statute are discussed in Bittker and Eustice, *Federal Income Taxation of Corporations and Shareholders* (3d ed.), par. 11.64 et seq. They point out that sec. 337(a) was enacted to provide liquidating corporations a safe procedure for disposing of corporate assets without running the risk of double taxation. They note that prior to the enactment of sec. 337 (a) of the Internal Revenue Code of 1954, a corporation which sold assets would be liable for a tax on any gain and that, in addition, since a liquidation redemption of stock is treated as a sale by the stockholders, they would be liable

for a second tax as a result of their gain for the redemption.

While there were methods even before 1954 by which a corporation could avoid a double tax, the procedures were cumbersome, and the decision of the United States Supreme Court in *Commissioner v. Court Holding Co.* (1945), 324 U. S. 331, 65 Sup. Ct. 707, 89 L. Ed. 981, injected considerable doubt concerning the circumstances under which a corporation and its shareholders could successfully avoid the double taxation. The problems created by the principle of the *Court Holding Co. Case* were attempted to be set at rest by sec. 337 (a) of the Internal Revenue Code. Under that section, when a statutorily prescribed plan of liquidation is adopted, whether the corporation sells its own assets and distributes the proceeds in liquidation or whether the corporation distributes its assets in kind, there will be no gain or loss to the corporation. *See* 1 Mertens, *Law of Federal Income Taxation,* p. 210, sec. 9.82. It is apparent that this same salutary result was sought in the enactment of sec. 71.337 (1), Stats., in 1955. However, the effect of that statute in Wisconsin was in some instances to prevent the collection of any tax when a liquidating corporation sold its assets.

While the right of Wisconsin to tax the gain by a corporation subject to its laws is without question, it would not in the ordinary case have the jurisdiction to tax a gain in the hands of a nonresident shareholder. Accordingly, the effect of the statute was to deprive the state of Wisconsin of what might be substantial tax revenues. The federal government, of course, does not face a similar problem. Wisconsin's dilemma in this respect appears in the bill jacket for ch. 190, Laws of 1961. Ch. 190 amended the 1955 version of sec. 71.337 (1), Stats., to its present form. The following commentary appears in the bill jacket:

"The purpose of this section is to limit the non-recognition of gains and losses to corporations under Section 71.337 to the extent that such gains and losses are participated in by Wisconsin residents.

"Since non-resident stockholders are not taxable by Wisconsin on the gain which they receive when they surrender their stock, the present statute, which was intended to prevent double taxation, permits a total escape of taxation in the event and to the extent that the shareholders are non-residents."

It is thus apparent that the assimilation of the federal law into the Wisconsin tax structure resulted in the truncation of Wisconsin's acknowledged taxing jurisdiction. It was possible for a corporation in liquidation under the 1955 version of sec. 71.337 (1), Stats., to realize substantial gains on the sale of its assets with little tax liability to Wisconsin at any point if all of its shareholders or most of them were nonresidents of the state. Resident shareholders could, of course, be taxed on their gains upon the redemption of the stock.

The effect of ch. 190, Laws of 1961, was to amend sec. 71.337 (1), Stats., to permit the state of Wisconsin to collect taxes from the corporation to the extent that nonresidents participate in the distribution. The gain realized by resident stockholders continues to be taxed to them personally. Simanco argues that the 1961 enactment creates an unconstitutional classification of corporations dependent upon the residency of their shareholders and that such classification constitutes a denial of the equal protection of the laws.

In the trial court's opinion, the operation of the currently effective statute is discussed. The memorandum opinion points out that if corporation A has no nonresident shareholders, it would pay no corporate franchise or income taxes if it liquidates under the terms of sec. 71.337 (1), Stats., while corporation B, with 25 percent of its stock owned by nonresidents, would pay

tax on one fourth of its gain. Corporation C, with 75 percent of its stock owned by nonresidents, would pay tax on three fourths of such gain. If corporation D is entirely owned by nonresident shareholders, it would be required to pay tax on the entire amount of such gain.

While strong arguments continue to be made that a corporation is not protected by the equal-protection provision of the United States Constitution (*see* dissenting opinion of Mr. Justice DOUGLAS, *Wheeling Steel Corp. v. Glander* (1949), 337 U. S. 562, 576, 69 Sup. Ct. 1291, 93 L. Ed. 1544), nevertheless, it appears that the judicial resolution of this question is no longer in doubt. Whatever the intent of the original authors of the fourteenth amendment may have been, by judicial gloss the protection of this portion of the fourteenth amendment has been extended to corporations as well as to natural persons. *Connecticut General Co. v. Johnson* (1938), 303 U. S. 77, 58 Sup. Ct. 436, 82 L. Ed. 673; *Liggett Co. v. Lee* (1933), 288 U. S. 517, 53 Sup. Ct. 481, 77 L. Ed. 929.

There is, however, a strong presumption that legislative enactments are constitutional, and the burden on one asserting the unconstitutionality of a properly enacted statute is heavy indeed. *Just v. Marinette County* (1972), 56 Wis. 2d 7, 26, 201 N. W. 2d 761; *State ex rel. Warren v. Reuter* (1969), 44 Wis. 2d 201, 211, 170 N. W. 2d 790.

Moreover, where a tax measure is involved, the presumption of constitutionality is strongest. The courts have given recognition to the essentiality of taxation in preserving an ordered society, and there is implicit recognition in judicial decisions that the principle of absolute equality and complete congruity of the treatment of classifications is impossible and must be sacrificed in the interests of preserving the governmental function.

This court has recognized that the equal-protection clause, unless apparent misclassifications are gross indeed, is of little moment in determining the constitutionality of a state tax. In *Hillside Transit Co. v. Larson* (1954), 265 Wis. 568, 583, 62 N. W. 2d 722, the position of the court was well-summarized by Mr. Justice CURRIE, who stated:

". . . a legislature has much more leeway in granting exemptions in taxation measures than it does in regulatory measures under its police power without running athwart the equal-protection-of-the-laws clause of the Fourteenth amendment."

The same principle was stated in *Associated Hospital Service, Inc. v. Milwaukee* (1961), 13 Wis. 2d 447, 470, 109 N. W. 2d 271. The same position has been uniformly taken by the United States Supreme Court. In *Walters v. City of St. Louis* (1954), 347 U. S. 231, 74 Sup. Ct. 505, 98 L. Ed. 660, the court upheld a municipal income tax which classified individuals according to whether they were wage earners or self-employed. The court, at pages 237, 238, citing from *Green v. Frazier* (1920), 253 U. S. 233, 239, 40 Sup. Ct. 499, 64 L. Ed. 878, said:

" 'When the constituted authority of the State undertakes to exert the taxing power, and the question of the validity of its action is brought before this court, every presumption in its favor is indulged, and only clear and demonstrated usurpation of power will authorize judicial interference with legislative action.' "

In accord are *Carmichael v. Southern Coal Co.* (1937), 301 U. S. 495, 509, 57 Sup. Ct. 868, 81 L. Ed. 1245; *Allied Stores of Ohio v. Bowers* (1959), 358 U. S. 522, 79 Sup. Ct. 437, 3 L. Ed. 2d 480. *Allied Stores,* pages 526, 527, points out:

"The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic

concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. . . . 'To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure.' . . . 'If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' "

In a series of uninterrupted cases, the United States Supreme Court has said that, in areas of economic and fiscal regulation, the states have the broad power to make classifications in pursuit of reasonable state policies. *Dandridge v. Williams* (1970), 397 U. S. 471, 484, 485, 90 Sup. Ct 1153, 25 L. Ed. 2d 491; *Levy v. Louisiana* (1968), 391 U. S. 68, 71, 88 Sup. Ct. 1509, 20 L. Ed. 2d 436; *Williamson v. Lee Optical Co.* (1955), 348 U. S. 483, 75 Sup. Ct. 461, 99 L. Ed. 563. The uniformity of these holdings has led one commentator to state:

"It would seem, then, that in fiscal and regulatory matters, the [Supreme] Court has not only entertained a presumption of constitutionality and placed the burden on the challenging party to show that the law has no reasonable basis, but has in fact almost abandoned the task of reviewing questions of equal protection." *Developments in the Law—Equal Protection,* 82 Harv. L. Rev. (1969), 1065, 1087.

Only if a challenger can show that the classification is arbitrary and has no reasonable purpose or relationship to the facts or a justifiable and proper state policy will a legislative classification fall on the grounds of a denial of equal protection. *Dandridge v. Williams* (1970), 397 U. S. 471, 90 Sup. Ct. 1153, 25 L. Ed. 2d 491; *Morey v. Doud* (1957), 354 U. S. 457, 77 Sup. Ct. 1344, 1 L. Ed. 2d 1485; *Vanden Broek v. Reitz* (1971), 53 Wis. 2d 87, 191 N. W. 2d 913; *State ex rel. Schopf v. Schubert* (1970), 45 Wis. 2d 644, 173 N. W. 2d 673.

Having these fundamental principles in mind, we consider the operation of the statute questioned here. The statute is attacked on the ground that it classifies a corporation for taxation solely on the basis of its proportion of nonresident shareholders. It should be noted initially that it is unquestioned in these proceedings that the gain on the liquidation of the corporation is within the jurisdiction of the state's taxing authority without consideration of the residence of its shareholders and could be taxed in full. The basic power to tax the corporation under the circumstances present here is admitted. It should also be noted that sec. 71.337 (1), Stats., does not accord different treatment to foreign and domestic corporations. If either is within the state's taxing jurisdiction, it is treated alike. Moreover, the impact of the tax levied in a particular case, where there is a gain on liquidation, falls equally on the resident and nonresident shareholders of that corporation; and following the imposition of the tax, all shareholders, residents and nonresidents alike, are treated the same.

It is also important to note that the statute is applicable only to a corporation which is in complete liquidation. It has no application whatsoever to a going concern, and any considerations of either a constitutional or policy nature conceivably applicable to a viable corporation are inappropriate. For the purposes of this statute,

the corporation in liquidation is merely a conduit in the disposition of its assets to the redeeming shareholders.

The classification which results in the determination that the gain subject to tax is proportional to the non-resident shareholders is a reasonable implementation of a legislative policy based upon a proper public purpose. Nonresident shareholders ordinarily would escape any personal income taxation by the state of Wisconsin. Wisconsin taxpayers are personally taxed on any gain that might be realized. The unamended 1955 version of the statute had the effect of permitting the entire gain by the corporation to be irretrievably lost for taxation purposes by the state, except to the extent that a gain was realized by resident Wisconsin shareholders. To the extent that a liquidating corporation had nonresident shareholders, the gains to the corporation upon a liquidating sale would go totally untaxed. If the shareholders were totally nonresidents, the exemption from the tax would be complete. The classification adopted by the statute is related directly to the incidence of personal taxation upon the shareholders. The classification is based upon a real and not an arbitrary or capricious difference.

In any particular liquidation, even under the revised statute, it is apparent that, insofar as Wisconsin is concerned, the impact of the tax falls heavily upon a Wisconsin resident, for he is obliged not only to have his distributive share reduced by the tax on the corporation's gain apportioned to out-of-state residents, but, in addition, he is taxed on his personal distribution. The out-of-state resident may, however, be taxed by the jurisdiction of his residence. Nevertheless, the impact of the present statute falls heaviest on the local resident.

In this aspect of the equal-protection clause, the concurring opinion of Mr. Justice BRENNAN in *Allied Stores of Ohio v. Bowers, supra,* pages 532, 533, is instructive.

He points out that the equal-protection ·clause of the United States Constitution is an instrument of federalism and that a distinction which burdens the property of nonresidents but not the like property of residents is outside the constitutional pale; but he points out that, to the extent local residents are unfairly burdened by a fiscal regulation, there is generally a rational basis to conclude that those who are bound to a state by the tie of residence are proper persons to bear an additional onus of the cost of its operations. From the viewpoint of the federal government at least, Mr. Justice BRENNAN takes the position that any relief that state residents seek must be obtained from their own legislatures.

In the trial judge's memorandum opinion he points out that the added incident of tax burden could be obviated administratively by totally taxing the gain in the hands of the corporation and by affording a tax credit to the individual Wisconsin resident. While this alternative procedure might have much to recommend it, in the absence of any constitutional defect in the present system, how the tax is to be collected and administered is wholly within the purview of the legislature. Moreover, we see administrative advantages in the present system which could have impelled the legislature to impose a single tax on the corporate gain, particularly in instances such as this where the ultimate determination of the corporate gain may be delayed for years after the distribution to the shareholders.

The trial court placed much reliance upon *Columbia Motor Hotels, Inc. v. State Tax Commission* (1967), CCH Oregon Tax Reports, par. 201–820. In that case, the Oregon tax court held a statute substantially the same as sec. 71.337 (1), Stats., to be a denial of equal protection. That case, however, we believe improperly, relied on *Wheeling Steel, supra,* and *Bowers, supra,* in reaching a conclusion not supported by either case—

that a tax statute that differentiates on the basis of residency is ipso facto a denial of equal protection. In the *Bowers Case,* an Ohio *ad valorem* tax which excluded merchandise owned by nonresidents and warehoused within the state but included identical property owned by residents was upheld. The United States Supreme Court concluded that there was a legitimate state policy implicit in the legislation to encourage trade with other states. In the *Wheeling Steel Case,* an Ohio *ad valorem* tax was held unconstitutional which exempted certain intangibles owned by domestic corporations and taxed identical property owned by corporations doing business in the state. In *Wheeling Steel* there was a clear discrimination against foreign corporations. Under the Wisconsin statute, domestic and foreign corporations are treated identically. In a particular liquidation, the impact of the corporate tax falls with identical force upon resident and nonresident shareholders.

The questioned statute is constitutional and does not violate the equal-protection clause of the United States Constitution.

*By the Court.*—Judgment reversed.

HALLOWS, C. J. *(dissenting).* I think the reserve judge was correct in holding sec. 71.337 (1), Stats., unconstitutional and the judgment should be affirmed. The narrow question is whether the state for income tax purposes can treat corporations differently on the basis of the residency of their shareholders.

I have no quarrel with the general statements of law made by the majority, but I do challenge its deductions and reasoning. A classification for taxation must be reasonable and rest on some ground of difference which has a substantial relationship to the object of the legislation. All persons similarly circumstanced must be treated alike. *Royster Guano Co. v. Virginia* (1920),

253 U. S. 412, 415, 40 Sup. Ct. 560, 64 L. Ed. 989. A corporation is constitutionally entitled to the equal protection of law. *Wheeling Steel Corp. v. Glander* (1949), 337 U. S. 562, 69 Sup. Ct. 1291, 93 L. Ed. 1544.

The object of sec. 71.337 (1), Stats., is to avoid double taxation. To attain this for Wisconsin shareholders, the section does not recognize certain capital gains realized by a Wisconsin corporation in liquidation. This exclusion varies in each corporation depending upon what percentage of its shareholders are Wisconsin residents. Thus the tax seeks to reach indirectly only the income of nonresidents whom the state of Wisconsin has no jurisdiction to tax directly.

The classification for an income tax on a corporation is unreasonable because it disregards the corporate entity—does not treat all corporations equally in two respects—and in effect discriminates against Wisconsin shareholders by taxing them twice, thus frustrating the object of the section.

Under the tax, Wisconsin shareholders bear their proportion of the tax imposed on the corporation by the resulting reduction in value of their shares but also again are taxed in personal income tax on their realized capital gain. A going corporation is treated differently than a liquidating one and liquidating corporations are treated differently depending on the residency of the shareholders, *i.e.*, a corporation with all nonresident shareholders is fully taxed, a corporation with all Wisconsin shareholders is not taxed. The tax cannot be justified as attempted by the majority on the ground the corporation is merely a conduit in the liquidation proceedings. If this were true, the tax based on nonresidency should be allocated to the nonresident shareholders, but this the state of Wisconsin has no jurisdiction to do. The end attempted by sec. 71.337 (1), Stats., does not justify piercing the corporate veil to find a basis for a classifica-

tion which in fact does not fairly and substantially attain the objective. Residency of shareholders as a basis for taxing a corporation is unreasonable as a basis for corporate tax and contrary to the accepted law to recognize a corporation as a separate entity.

Shareholders of a corporation should be treated alike and the objective underlying sec. 71.337 (1), Stats., does not allow a shortcut and save it because the means to that end violates the guarantee of the equal protection clause of the laws. *Rinaldi v. Yeager* (1966), 384 U. S. 305, 86 Sup. Ct. 1497, 16 L. Ed. 2d 577.

I am authorized to state Messrs. Justices CONNOR T. HANSEN and ROBERT W. HANSEN join in this dissent.